IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRANDON LESTER,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　 )
　　　Plaintiff,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　 　)
　　　　　　　　　　　　　　　　　　 )　　Civil Action No. 7:15cv665
SMC TRANSPORT, LLC,　　　　　　　 　)
　　　　　　　　　　　　　　　　　　 )
and　　　　　　　　　　　　　　　 　 )
　　　　　　　　　　　　　　　　　　 )
ISRAEL MARTINEZ, JR.,　　　　　　 　)
　　　　　　　　　　　　　　　　　　 )
and　　　　　　　　　　　　　　　 　 )
　　　　　　　　　　　　　　　　　　 )
SALINAS EXPRESS, LLC,　　　　　　 　)
　　　　　　　　　　　　　　　　　　 )
　　　Defendants.　　　　　　　　　 　)

## FIRST AMENDED COMPLAINT

The plaintiff, Brandon Lester, by counsel, files this Complaint against the defendants, SMC Transport, LLC, Israel Martinez, Jr., and Salinas Express, LLC, and, in support thereof, states as follows:

1. Plaintiff, Brandon Lester, is a citizen and resident of the Commonwealth of Virginia.

2. At all relevant times Defendant SMC Transport, LLC ("SMC") is a limited liability company organized under the laws of the State of Texas, whose members are citizens and residents of the State of Texas.

3. SMC is a regulated motor carrier under the Federal Motor Carrier Safety Administration and is primarily in the business of hauling property throughout the United States as an interstate transportation company.

4. Defendant Israel Martinez, Jr. ("Martinez") is a CDL license holder regulated under the Federal Motor Carrier Safety Administration, licensed by the State of Texas and is a resident and citizen of Zapata, Texas.

5. Defendant Salinas Express, LLC ("Salinas Express") is a limited liability company organized under the laws of the State of Texas, whose members are citizens and residents of the State of Texas.

6. Salinas Express is a regulated motor carrier under the Federal Motor Carrier Safety Administration and is primarily in the business of hauling property throughout the United States as an interstate transportation company.

7. This Court has subject matter jurisdiction over this action because of diversity of citizenship of the parties pursuant to 28 U.S.C. §1332 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over SMC and Salinas Express by virtue of defendants' operation as a motor carrier on the public highways of the Commonwealth of Virginia and defendant's systematic and continuous business activities in the Commonwealth of Virginia.

9. This Court has personal jurisdiction over Martinez by virtue of defendants' operation of a motor vehicle on Interstate 81 ("I-81") in the Commonwealth of Virginia on October 26, 2015.

10. The events giving rise to these proceedings occurred in Botetourt County, Virginia, and, as such, venue is within this district as provided by 28 U.S.C. § 1391(a).

11. On October 26, 2015, in the early morning hours before sunrise, the plaintiff was operating a motor vehicle on I-81 at approximately mile marker 158.10 in Botetourt County, Virginia.

12. At approximately the same time, Martinez was operating a tractor registered to and owned by SMC (the "SMC Tractor"), while towing another disabled tractor leased to Salinas Express (the "Salinas Express Tractor"), and was making a U-turn onto I-81 out of the entrance ramp of a rest stop I-81 at approximately mile marker 158.10 in Botetourt County, Virginia, in contravention of the laws of the Commonwealth of Virginia.

13. Prior to agreeing to travel on this job to Virginia for Salinas Express, Martinez had completed his employment application and drug testing for the company during the summer of 2015 and had also been paid in cash "under the table" to assist in driving on other jobs.

14. Roy Salinas, who accompanied Martinez and who was in the course and scope of his employment with Salinas Express and SMC, as detailed herein, was directing Martinez and was waving or signaling to Martinez to exit by driving the SMC Tractor out of the entrance ramp of the rest stop.

15. Defendant Martinez was relying upon the instruction of Roy Salinas in driving the two tractors out of the entrance ramp of the rest stop.

16. The entrance ramp was located just past a small rise on I-81 South which obscured its presence from drivers on I-81 until they were almost adjacent to it. Defendant

Martinez was aware of the visibility issues associated with entrance ramp's location in relation to I-81's southbound lanes.

17. The speed limit on that portion of I-81 South is 70 mph.

18. As a result of the negligent actions of Martinez, making a U-turn out from the entrance ramp onto I-81 South across all lanes of traffic and blocking all lanes of traffic, the Plaintiff encountered Martinez's vehicles, leaving him no option to steer his vehicle away from the obstruction caused by Martinez's vehicles, and leaving him no opportunity to avoid striking the vehicle driven and/or towed by Martinez.

19. As a proximate result of the impact between the vehicles driven by plaintiff and Martinez, the plaintiff's vehicle was rendered immobile and his doors jammed shut leaving him in a helpless position on I-81, knowing that traffic would be oncoming over the rise immediately preceding over the area of impact.

20. Another vehicle coming over the rise immediately prior to the area of the plaintiff's and Martinez's vehicles, hit the plaintiff's vehicle.

21. The extreme force of the collisions crushed the plaintiff's vehicle and the plaintiff was ejected from his vehicle.

22. As a result of the collisions, the plaintiff suffered severe bodily injuries.

23. At all times relevant to the claim herein, Martinez was acting as an employee and/or agent of SMC while operating a motor vehicle entrusted to him by SMC and bearing SMC's placards.

24. Additionally, upon information and belief, Martinez was at all relevant times acting as an employee and/or agent of Salinas Express while operating a motor vehicle entrusted to him by Salinas Express and while also using the lights and flashers on the

4

disabled Salinas Express tractor he was towing and which was also entrusted to him by Salinas Express.

25. Martinez's status and Roy Salinas's status as both an employee/agent of Salinas Express and SMC was the result of a joint agreement between the motor carriers pursuant to which Salinas Express used SMC's Tractor in order to complete the job contracted for by Salinas Express and tow the disabled Salinas Express Tractor back to Texas after it broke down in Virginia.

26. SMC not only authorized use of its tractor by employees of Salinas Express, but also allowed use of its placards from the SMC Tractor, thus evidencing the liability coverage it continued to maintain on the tractor as well as its continued control over the operator and those assisting the operator who likewise became its employees.

27. Pursuant to the agreement, SMC's co-owner, Sergio Cuellar ("Cuellar"), a cousin of Rudy Salinas, the owner of Salinas Express, took the SMC Tractor to a truck stop in Texas to meet Roy Salinas and helped Roy Salinas, Martinez and one other Salinas Express employee, Eduardo Lozano ("Lozano"), learn how to use the towing equipment to hook a second tractor to the SMC Tractor.

28. In meeting Roy Salinas, Martinez and Lozano at the truck stop, Cuellar knew that these men would take turns in driving the SMC Tractor to Virginia and back to Texas.

29. During the process of physically attaching a Salinas Express Tractor to the SMC Tractor, Cuellar did not remove SMC placards from the SMC Tractor or advise Martinez that he had not yet contacted his insurance company to add the SMC vehicle to SMC's existing policy as a newly acquired vehicle.

30. The Salinas Express tractor which was towed by Martinez and Roy Salinas to Virginia by use of the SMC Tractor, was subsequently used to haul the Salinas Express trailer to complete the interstate shipment of the goods in question.

31. In turn, after reaching the rest stop in Virginia, the SMC Tractor was then used to complete the return trip of the disabled Salinas Express Tractor back to Salinas Express's facility in Texas.

32. Through the use of the SMC Tractor, the intent of both SMC and Salinas Express was to conclude the original interstate trip by completing the contract for the shipment of the goods on the Salinas Express trailer and returning the Salinas Express Tractor back to the Salinas Express facility in Texas. Accordingly, at all relevant times, both SMC and Salinas Express were acting as for-hire motor carriers engaged in the business of the shipment of property in interstate commerce.

33. Salinas Express's request that SMC assist it to complete the interstate trip in question presented SMC with the perfect opportunity to complete a final (and the only) test run of the SMC Tractor, which had been under repair by SMC's owner since its purchase. In addition to benefits that SMC received by assisting Salinas Express which was a for-hire carrier owned by family members related to SMC's owner, and any cash received "under the table" by SMC for its assistance, SMC received affirmation that the SMC Tractor was operational for interstate hauls, without having to risk testing it while hauling goods under its own shipping contracts.

34. At the time Martinez began making a U-turn out of the entrance ramp of the rest stop on I-81, he was utilizing the hazard lights on the Salinas Express Tractor but had not otherwise attempted to place flares on I-81 South to alert drivers that his vehicle would

6

be blocking the southbound lanes in the process of making a U-turn onto the highway at a very low rate of speed.

35. Before allowing Salinas Express to utilize the SMC Tractor, SMC had the Tractor registered with the Texas Department of Motor Vehicles, representing that it met the financial responsibility requirements of the Federal Motor Carrier Act.

36. As a result of Martinez's actions taken during the scope of his employment and/or agency and in furtherance of the business of SMC and Salinas Express, or as an individual operating a motor vehicle entrusted to him by SMC and Salinas Express, SMC and Salinas Express are vicariously responsible for Martinez's wrongful conduct, actions and inactions.

37. As a result of Roy Salinas's actions taken during the scope of his employment and/or agency and in furtherance of the business of SMC and Salinas Express, Salinas Express and SMC are vicariously liable for Roy Salinas's wrongful conduct, actions and inactions.

38. Thus Martinez, SMC and Salinas Express are liable to the plaintiff for all damages and losses he has incurred as a result of this incident.

## COUNT 1
## NEGLIGENCE OF MARTINEZ AND
## VICARIOUS LIABILITY OF SMC AND SALINAS EXPRESS

39. Martinez was negligent in that he illegally operated his vehicle in an extremely dangerous and reckless manner when he knew that doing so would likely result in severe injury or death to others, including the plaintiff, by illegally backing his vehicle out of an I-81 off-ramp onto I-81 and blocking all lanes of travel on this major highway.

40. As a result of Martinez's actions taken during the scope of his employment and/or agency with SMC which placed Martinez in interstate travel with its placards,

7

defendant SMC is vicariously responsible for Martinez's wrongful conduct, actions and inactions, and negligence.

41. As a result of Martinez's actions taken during the scope of his employment and/or agency also with Salinas Express, defendant Salinas Express is vicariously responsible for Martinez's wrongful conduct, actions and inactions, and negligence.

## COUNT 2
### WILLFUL AND WANTON NEGLIGENCE OF MARTINEZ AND VICARIOUS LIABILITY OF SMC AND SALINAS EXPRESS

42. Martinez was willfully and wantonly negligent in that he illegally operated his vehicle in an extremely dangerous and reckless manner when he knew that doing so would likely result in severe injury or death to others, including the plaintiff, by illegally turning his vehicle before sunrise out of an I-81 entrance ramp at a low rate of speed onto this major highway, thereby blocking the southbound lanes of travel.

43. Before attempting this extremely hazardous maneuver onto I-81, Martinez had previously travelled into the rest stop and knew of the very limited visibility of the entrance ramp for drivers on the highway caused by a rise located immediately before the entrance ramp.

44. After the accident, after the plaintiff had been taken from the scene by emergency personnel and after Martinez had been charged with reckless driving for flagrantly ignoring the traffic warning signs on the entrance ramp prohibiting traffic from exiting the rest stop via this roadway, Martinez again attempted to make a U-turn onto I-81 South from the entrance ramp, demonstrating a continued conscious disregard for the lives of other motorists on I-81.

45. The actions of Martinez in operating a tractor-trailer to make a U-turn out the entrance ramp of a rest stop in I-81, before daylight and in an area of obscured visibility, demonstrated an intentional, willful and flagrant disregard for the safety and lives of those drivers on I-81 in the vicinity, constituting willful negligence and warranting punitive damages.

46. SMC and Salinas Express acquiesced and/or condoned the actions of Martinez making them likewise responsible for said damages, in addition to compensatory damages arising from Plaintiff Brandon Lester's injuries in the accident.

## COUNT 3
## SALINAS EXPRESS'S NEGLIGENT ENTRUSTMENT

47. At all relevant times herein Salinas Express owed a duty to Plaintiff Brandon Lester to ensure that Martinez was competent and fit to drive tractors utilized by Salinas Express in the course of its business so as to not create an unreasonable risk of harm to the Plaintiff.

48. Salinas Express knew that Martinez, from his driving record, had a history of causing accidents and failing to adhere to state and federal regulations governing the operation of his vehicle.

49. Salinas Express knew that Martinez was not properly trained and/or was incompetent to operate a tractor and tow another tractor so as not to endanger others.

50. Prior to the accident, Salinas Express had been paying Martinez "under the table" to drive on other jobs and knew first-hand that he did not adhere to the federal regulations governing operation of his vehicle.

51. Despite this knowledge, Salinas Express entrusted the tractor to Martinez knowing he was likely to operate it on Virginia highways, endangering other drivers.

## COUNT 4
## SALINAS EXPRESS'S NEGLIGENT HIRING OF DEFENDANT MARTINEZ

52. At all times relevant herein, Salinas Express owed a duty to Plaintiff Brandon Lester to ensure that Martinez was competent and fit to drive tractors utilized by Salinas Express in the course of its business so as not to create an unreasonable risk of harm to Plaintiff Brandon Lester.

53. At all times relevant herein, Salinas Express owed a duty to the Plaintiff and the general public to ascertain the qualifications and competence of Martinez's specially because Martinez's occupation requires skill and experience, in the absence of which is extremely hazardous to others.

54. Salinas Express had the affirmative duty to investigate Martinez's competency to drive and ascertain his driving record in that process.

55. Salinas Express breached its duties to the Plaintiff by hiring Martinez despite the fact that Martinez had a terrible driving history and was incompetent and unfit to drive a tractor in interstate commerce.

56. As a result of Salinas Express's negligence, the Plaintiff suffered severe injuries in the motor vehicle accident of October 26, 2015.

## COUNT 5
## SMC'S NEGLIGENT ENTRUSTMENT OF
## ITS VEHICLE TO DEFENDANT MARTINEZ

57. At all times relevant herein, SMC owed a duty to Plaintiff Brandon Lester to ensure that Martinez was competent and fit to drive the SMC Tractor which SMC entrusted to him so as not to create an unreasonable risk of harm to Plaintiff Brandon Lester.

58. At all times relevant herein, SMC owed a duty to the Plaintiff Brandon Lester and the general public to ascertain the qualifications and competence of Martinez's specially

because Martinez's occupation requires skill and experience, in the absence of which is extremely hazardous to others.

59. Whether Martinez was SMC's employee or an independent contractor, SMC had the affirmative duty to investigate Martinez's competency to drive and ascertain his driving record in that process.

60. SMC breached its duties to the Plaintiff by hiring Martinez and/or entrusting a tractor to him despite the fact that Martinez had a terrible driving history and was incompetent and unfit to drive a tractor in interstate commerce.

61. As a result of SMC's negligence, the Plaintiff suffered severe injuries in the motor vehicle accident of October 26, 2015.

## COUNT 6
## SMC'S NEGLIGENCE PER SE (FAILURE TO PROCURE INSURANCE)

62. Despite reaching an agreement with Salinas Express whereby Martinez, a driver selected by Salinas Express, would be operating the SMC Tractor on an interstate job utilizing SMC's placards, SMC allegedly failed to properly identify the SMC Tractor to its insurance carrier ("United Specialty") as a vehicle to be covered under the policy.

63. SMC had the duty to the Plaintiff under federal law to ensure that the tractor it owned, which was being operated by Martinez, had the minimum levels of financial responsibility required by 49 CFR §387.7.

64. In registering the vehicle with the Texas Department of Motor Vehicles, SMC represented that the SMC tractor had the minimum levels of financial responsibility required under the Federal Motor Carrier regulations.

65. Plaintiff Brandon Lester is a member of the public intended to be protected by the enactment and requirements of 49 CFR §387.7.

66. To the extent that United Specialty is successful in arguing that the underlying policy to which the Form MCS-90 is attached does not directly cover Martinez or the SMC tractor for the accident at issue, then SMC is in breach of its statutory duty and is liable for said negligent breach.

67. As a result of SMC's negligence, to the extent that Martinez's or Roy Salinas's negligence is not insured under the United Specialty Policy, SMC is liable for those damages and its own placard liability coverage is triggered.

## COUNT 7
## PLACARD LIABILITY OF SMC

68. In allowing use of its tractor with its placards remaining in place for the trip at issue, SMC acquiesced to and demonstrated its continuing control over operation of the motor vehicle and operator at all relevant times, including at the time of the accident.

69. The owner of SMC was the individual who provided the SMC Tractor to an employee of Salinas Express after he had a towing mechanism installed on the tractor and after he elected not to have SMC's placards removed before putting the tractor back into the stream of interstate operations.

70. As a matter of law, Martinez was operating the SMC Tractor as an employee of SMC for whom SMC has vicarious liability.

## COUNT 8
## CONSTRUCTIVE FRAUD AS TO SMC

71. By expressly authorizing Salinas Express's employees to use its vehicle for the purpose of completing the interstate shipment of goods under its ICC license and with its placards, SMC negligently represented to Salinas Express, its drivers, the Texas Department

of Motor Vehicles and the general public that it met the financial responsibility requirements of the Federal Motor Carrier Act.

72. In the event that the underlying insurance policy issued by United Specialty Insurance Company does not provide liability coverage to Martinez, then SMC's negligent misrepresentation upon which Martinez, the Texas Department of Motor Vehicles and the general public relied, then SMC is liable to the Plaintiff, as a member of the general public, for his damages proximately caused by the accident.

## COUNT 9
### VICARIOUS LIABILITY OF SALINAS EXPRESS AND SMC FOR ROY SALINAS'S NEGLIGENCE AND WILLFUL NEGLIGENCE

73. Roy Salinas was negligent in directing that Martinez drive the SMC Tractor out of the entrance ramp of the I-81 rest stop rather than exit through the exit ramp at the facility, in contravention of Virginia law.

74. In so acting, Roy Salinas breached a duty of care to the drivers of vehicles on southbound I-81, including Plaintiff Brandon Lester.

75. As a matter of law, Defendant Salinas Express and SMC are vicariously liable for Roy Salinas's actions taken during the course and scope of his employment with Defendant Salinas Express.

76. The actions of Roy Salinas in directing an operator of a tractor-trailer to make a U-turn out the entrance ramp of a rest stop on I-81, before daylight and in an area of obscured visibility, demonstrated an intentional, willful and flagrant disregard for the safety and lives of those drivers on I-81 in the vicinity, constituting willful negligence and warranting punitive damages.

77. Salinas Express and SMC acquiesced and/or condoned the actions of Roy Salinas making them likewise responsible for said damages, in addition to compensatory damages arising from Plaintiff Brandon Lester's injuries in the accident.

### PROXIMATE CAUSE AS TO ALL COUNTS

78. As a direct and proximate result of SMC's, Salinas Express's, Roy Salinas's and Martinez's negligence, wanton and willful negligence and Salinas Express's negligent entrustment of the vehicle to Martinez, the plaintiff was caused to sustain serious and permanent injuries; has been prevented from transacting his business and personal affairs; has suffered, and will continue to experience, physical pain and suffering; has sustained permanent disability, deformity and loss of earning capacity; has incurred, and will incur in the future, lost wages; has incurred, and will incur in the future, medical and hospital expenses in an effort to be cured of his injuries; has incurred other out-of-pocket expenses; property damage; and, is entitled to all other damages permitted by law.

WHEREFORE, the plaintiff, by counsel, asks that this Court enter judgment against SMC, Salinas Express and Martinez in the sum of SEVEN MILLION, FIVE HUNDRED THOUSAND DOLLARS ($7,500,000.00), plus interest thereon from October 26, 2015.

FURTHER, due to the willful and wanton negligence and disregard for the safety and well-being of the plaintiff, plaintiff requests punitive damages in the amount of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00), plus interest thereon from October 26, 2015.

ADDITIONALLY, the plaintiff requests that the Court award him interest from the date of the accident and his costs expended in connection with this action.

TRIAL BY JURY IS DEMANDED.

                                  BRANDON LESTER

                        By:    s/MELISSA W. ROBINSON

Melissa W. Robinson (VSB #29065)
Victor S. ("Dinny") Skaff, III (VSB #40054)
Johneal M. White (VSB #74251)
*Counsel for Plaintiff*
GLENN ROBINSON & CATHEY, PLC
400 Salem Avenue, Suite 100
Roanoke, VA 24016
Phone: (540)767-2200
Fax: (540)767-2220
mrobinson@glennrob.com
vskaff@glennrob.com
jwhite@glennrob.com

## CERTIFICATE OF SERVICE

    I hereby certify that on June 6, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Daniel P. Frankl, Esquire
        Audra M. Dickens, Esquire
        FRANKL MILLER & WEBB, LLP
        1711 Grandin Road SW
        Roanoke, VA 24015

        Lawrence A. "Lex" Dunn, Esquire
        Gibson Sinclair Wright, Esquire
        Morris & Morris, P.C.
        11 South 12th Street - Fifth Floor
        Richmond, VA 23219

        David W. Hearn, Esquire
        Sands Anderson PC
        1111 East Main Street, Suite 2400
        Richmond, VA 23219-1998

                              s/ MELISSA W. ROBINSON
                                  OF COUNSEL