IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON LESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil action No. 7:15-cv-00665 |
| | ) |
| SMC TRANSPORT, LLC. | ) |
| | ) |
| and | ) |
| | ) |
| ISRAEL MARTINEZ, JR., | ) |
| | ) |
| and | ) |
| | ) |
| SALINAS EXPRESS, LLC, | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant SMC Transport, LLC ("SMC"), by counsel, states the following for its Brief in Support of its Motion to Dismiss Counts 2, 5, 6, 7, 8, and 9 and the claim for punitive damages against it in Plaintiff Brandon Lester's ("Lester") First Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion")[1]:

## SUMMARY OF ALLEGATIONS

On October 26, 2015, Lester was driving a motor vehicle on I-81 near mile marker 158.10 in Botetourt County. Complaint at ¶ 11. Nearby, Defendant Israel Martinez ("Martinez") was operating a tractor registered to and owned by SMC that was towing a disabled tractor leased to

---

[1] All Rule references refer to the Federal Rules of Procedure unless otherwise noted.

Page **1** of **18**

Defendant Salinas Express, LLC ("Salinas Express") onto I-81 out of the entrance ramp of a rest area to U-turn back onto I-81. Complaint at ¶ 12. Roy Salinas, who accompanied Martinez, was directing Martinez and was waving or signaling Martinez to drive the SMC tractor out the entrance ramp of the rest area. Complaint at ¶ 14. Martinez relied on Roy Salinas's instruction in driving the SMC tractor and towing the Salinas Express tractor out of the entrance ramp. Complaint at ¶ 15. Lester's vehicle collided with the SMC and Salinas Express tractors. Complaint at ¶ 18. A vehicle travelling behind Lester then hit Lester's vehicle. Complaint at ¶ 20. Lester suffered bodily injuries as a result of the accident. Complaint at ¶ 22.

At the time of the collision, the SMC truck Martinez was driving bore SMC's placards. Complaint at ¶ 23. Martinez had also enabled the lights and flashers of the Salinas Express in tow. Complaint at ¶ 24. SMC and Salinas Express had agreed that Salinas Express would use SMC's tractor to complete a job contracted for by Salinas and to tow the disabled Salinas Express truck back to Texas. Complaint at ¶ 25. SMC had allowed the use of its placards on the SMC truck at the time of the accident. Complaint at ¶ 26.

As part of a previous agreement between SMC and Salinas Express, a co-owner of SMC, Sergio Cuellar ("Cuellar"), drove the SMC tractor involved in the accident to a truck stop in Texas to show Roy Salinas, Martinez, and Eduardo Lozano, another Salinas Express employee, how to hook another tractor to the SMC tractor. Complaint at ¶ 27. Cuellar then attached a Salinas Express tractor to the SMC tractor. Complaint at ¶ 29. In so doing, Cuellar neither removed SMC's placard from the SMC tractor nor told Martinez that he had not yet contacted SMC's insurer to the SMC tractor to SMC's policy. Complaint at ¶ 29. Martinez and Salinas then towed the Salinas Express tractor to Virginia, and the Salinas Express tractor was then used to haul the Salinas Express trailer

that the broken down Salinas Express tractor had been hauling. Complaint at ¶ 30. The trip to Virginia provided SMC with affirmation that its tractor was ready to haul interstate. Complaint at ¶ 33.

## STANDARD OF REVIEW

"To survive a motion to dismiss," pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

## ARGUMENT

**I.  Count 2 and Lester's claim for punitive damages should be dismissed because Lester has not pled facts to establish willful and wanton conduct.**

Count 2 alleges that Martinez was willfully and wantonly negligent. "Willful and wanton negligence is action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Woods v. Mendez, 265 Va. 68, 76–77, 574 S.E.2d 263, 268 (2003). Willful and wanton conduct is required for an award of punitive damages. Id. at 76, 574 S.E.2d at 268. Here, Lester has not pled sufficient facts to establish that Martinez knew that his conduct would probably injure another, and therefore Count 2's claim for willful and wanton negligence and Lester's claim for punitive damages should

be dismissed.

The Virginia Supreme Court has set a high bar for plaintiffs to establish willful and wanton conduct. See Philip Morris, Inc. v. Emerson, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988). ("Because punitive damages are in the nature of a penalty, they should be awarded only in cases of the most egregious conduct.") Acts as egregious as driving drunk in the wrong lane and killing another driver have not met the level of willful and wanton conduct. See Hack v. Nester, 241 Va. 499, 506-07, 404 S.E.2d 42, 45 (1990). Moreover, the Supreme Court of Virginia has found that showing at least some concern for others' safety, even if acting negligently, may defeat a claim for punitive damages as a matter of law. See Philip Morris, 235 Va. at 409, 368 S.E.2d at 283–88 (noting that even though landowners' efforts to bury and then subsequently remove canisters of a highly toxic chemical were either insufficiently safe or negligent as a matter of law, those efforts showed some concern for others so as to preclude willful and wanton negligence.)

The crux of Lester's willful and wanton argument is that Martinez "illegally turn[ed] his vehicle before sunrise out of an I-81 entrance ramp at a low rate of speed onto [I-81], thereby blocking the southbound lanes of travel." Complaint at ¶ 42. An illegal U-turn falls well below the level egregious behavior required to merit a claim for punitive damages.

Moreover, even if Martinez's actions were negligent, considering Lester's allegations as true shows that Martinez took several actions that showed concern for others. First, he relied upon Roy Salinas to assist and direct him in driving out the exit ramp. Complaint at ¶ 14. Martinez also engaged the lights and flashers of the Salinas Express tractor in tow as a safety precaution. Complaint at ¶ 15. Furthermore, he received instruction from Cuellar in how to tow a tractor with the SMC tractor prior to attempting to tow the broken down Salinas Express tractor. Complain at ¶

27. These safety precautions, even if they were ultimately insufficient, show a concern for the safety of others that bars Lester's claim for punitive damages as a matter of law. Such allegations cannot establish "knowledge and consciousness that injury will result from the act done." Giant of Va., Inc. v. Pigg, 207 Va. 679, 686, 152 S.E.2d 271, 277 (1967).

Also, Lester's allegation that "Martinez again attempted to make a U-turn onto I-81 South from the entrance ramp" after first responders took Lester from the scene is entirely irrelevant. Complaint at ¶ 44. Martinez's behavior after the accident occurred is entirely irrelevant to his actions at the time of the accident. The only allegations relevant to the claim of willful or wanton behavior are that Martinez "turne[d] his vehicle before sunrise out of an I-81 ramp at a low rate of speed on [the] major highway, thereby blocking the southbound lanes of travel" (Complaint at ¶ 42) and that Martinez "knew of the very limited visibility of the entrance ramp for drivers on the highway caused by a rise located immediately before the entrance ramp" (Complaint ¶ 43). Those facts are woefully insufficient to establish a claim for punitive damages.

Finally, even if Martinez's behavior were willful and wanton as pled, Lester has not pled that SMC participated, authorized, or ratified the allegedly willful and wanton conduct, as required for assessing punitive damages against SMC for the willful and wanton conduct of its alleged agent. Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963) (noting that punitive damages "'cannot be awarded against a master or principal for the wrongful act of his servant in which he did not participate, and which he did not authorize or ratify'") (quoting Hogg v. Plant, 145 Va. 175, 181, 133 S.E. 759, 760 (1926)); see also Hogg, 145 Va. at 180, 133 S.E. at 760 ("'A principal, therefore, though of course liable to make compensation for the injury done by his agent, with the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by

reason of wanton, oppressive or malicious intent on the part of the agent.'") (quoting Lake Shore R. Co. v. Prentice, 147 U.S. 101, 107 (1893)).  Without alleging such participation or alleged ratification, Lester cannot recover punitive damages against SMC, and his allegations that "SMC . . . acquiesced and/or condoned the actions of Martinez making them likewise responsible for said damages."  Complaint at ¶ 47.  First, Lester has pled no facts to support SMC's alleged acquiesce "and/or" condoning of Martinez's action, and therefore those conclusory statements alone are not enough to establish that SMC did, in fact, acquiesce or condone in the specific act of Martinez U-turning out of an exit ramp onto I-81.

Second, "acquiescence" or "condon[ing]" is not ratification.  "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge, or, if upon learning of the act, he fails promptly to disavow it."  Kilby v. Pickurel, 240 Va. 271, 275, 396 S.E.2d 666, 668–69 (1990) (internal citation omitted).  Here, Lester has not plead that SMC received any benefit from Martinez's decision to U-turn onto I-81 with full knowledge of the plan, and logic presumes that SMC could not accept any benefit from an act that led to the accident at issue.  Similarly, Lester has not pled any failure of SMC to disavow Martinez's U-turn.  For example, Lester has not pled that Martinez called SMC to inform it of his plan to U-turn onto I-81, which plan SMC could then have promptly disavowed.  Once the accident had occurred, there was nothing for SMC to disavow, as the accident had already happened and Martinez's actions were complete.  This case does not present a case, for example, when a principal may subsequently disavow a voidable business deal or transaction upon learning that its agents had acted outside of its authority.  See, e.g., Bank of Occoquan v. Davis, 155 Va. 642, 648, 16 S.E. 367, 368–69 (1931) (noting that the principal failure's to disavow his agent's unauthorized loaning of money to a

company amounted to ratification because the principal had been receiving the benefit of interest for roughly three years). Lester has pled no facts to suggest that SMC knew or should have known that SMC intended to U-turn out of the exit ramp and that SMC subsequently failed to disavow the action. And, once the accident occurred, it is clear that there was no benefit for SMC to receive or action to disavow.

> II. **Count 5 should be dismissed because Lester has not pled facts to support a claim for negligent entrustment against SMC.**

Count 5 seeks recovery against SMC for negligent entrustment of its tractor to Martinez. In order to state a claim for negligent entrustment against SMC, Lester must establish that SMC "knew, or had reasonable cause to know, that [it] was entrusting [its] car to an unfit driver likely to cause injury to others." Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972) (citing McNeill v. Spindler, 191 Va. 685, 690, 62 S.E.2d 13, 16 (1950); Restatement (Second) of Torts § 390 (1965)). Moreover, that unfit quality must have caused the accident. Hack, 241 Va. at 503–04, 404 S.E.2d at 43–44. Because Lester has neither plead that SMC knew or had reason to know of a particular unfit quality of Martinez nor that any unfit quality caused the accident, his claim for negligent entrustment should be dismissed.

Lester merely alleges that SMC had a duty "to ensure that Martinez was competent and fit to drive" and a duty "to ascertain the qualifications and competence of Martinez[]." Complaint at ¶¶ 57, 58. Alleging such duties does not imply constructive knowledge of any facts that SMC had reasonable cause to know that would establish constructive knowledge of Martinez's unfit qualities.

Moreover, aside from failing to plead knowledge, Lester's allegation that Martinez "had a terrible driving history and was incompetent and unfit to drive" falls well short of the specificity

Page **7** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 7 of 18   Pageid#: 1466

required to plead alleged unfit qualities to support a claim for negligent entrustment. Complaint at ¶ 60. Lester's claims that Martinez's driving history was "terrible" and that he "was incompetent and unfit to drive" are conclusory and void of any supporting facts. Lester has pled no facts underlying Lester's alleged terrible driving history (e.g. repeated accidents, tickets, or suspensions) that would establish that Lester may have been unfit to drive.

The insufficiency of alleging that Martinez had a "terrible driving history" becomes more apparent in considering causation. To recover for negligent entrustment Martinez's allegedly terrible driving history, the supposed unfit quality plead by Lester, must have caused the accident. Yet without specifics as to what lurked in Martinez's driving history, there is no way for a factfinder to determine what unfit quality of Martinez, allegedly known by SMC, caused the accident. A history alone could not have caused the accident; some unfit quality that marked that history would need to have caused this accident at issue. For example, if Lester pled that SMC knew that Martinez habitually received speeding tickets, then perhaps Lester could claim a prima facie case of negligent entrustment in a case in which speed was a factor. Lester's claim, though, lacks any such facts.

Moreover, Lester cannot claim that the accident itself shows that Martinez was unfit to drive. That after-the-fact argument does not establish any unfit quality that SMC knew or had reasonable cause to know at the time it allegedly entrusted its tractor to Martinez.

### III. Count 6 should be dismissed because there is no cause of action for negligently failing to procure insurance, and even if there were, SMC's alleged failure to procure insurance did not cause the accident.

Count 6 seeks damages against SMC for negligence per se for potential violation of 49 CFR § 387.7, which provides that "[n]o motor carrier shall operate a motor vehicle until the motor carrier

has obtained and has in effect the minimum levels of financial responsibility" as provided by the regulation. To state a claim for negligence per se based upon a statutory or regulatory violation, Lester must plead the following:

> [T]he tortfeasor had a duty of care to the plaintiff, the standard of care for that duty was set by statute, the tortfeasor engaged in in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, the plaintiff was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the violation of the statute was a proximate cause of the injury.

Steward ex rel. Steward v. Holland Family Properties, LLC, 284 Va. 282, 287, 726 S.E.2d 251, 254 (2012). "[A] statute [or regulation] setting the standard of care does not create the duty of care." Id. Here, the federal motor carrier regulation that Lester cites is not a safety regulation, and therefore Lester's negligence per se claim should be dismissed. Moreover, even if 49 CFR § 387.7 were a safety regulation, its violation was not a cause of the accident at issue, thereby providing another ground for dismissing the claim.

As mentioned above, Lester cannot rely upon a federal statute to create a duty in negligence; he may only cite violations of safety statutes and regulations to argue a per se breach of the standard of care. So, the duty at issue in Lester's negligence per se claim against SMC (through its alleged vicarious liability for Martinez's actions) would be Martinez's standard duty to exercise reasonable care in operating the SMC tractor. Clearly, failing to have insurance has nothing to do with the use of reasonable care in driving a tractor. Violating statutes or regulations as to, for example, proper brake maintenance or usage of signaling devices perhaps may establish a per se breach of the standard of care, but being uninsured cannot. Since maintaining insurance does not affect the safe operation of that tractor at all, it is not a safety regulation whose violation could establish the per se violation of Martinez's standard of care.

Page **9** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 9 of 18   Pageid#: 1468

Similarly, SMC's alleged failure to procure insurance (in violation of 49 CFR § 387.7) in no way caused Lester's alleged damages. Lester's alleged cause of his bodily injuries was Martinez's "making a U-turn out from the entrance ramp onto 1-81 South across all lanes of traffic and blocking all lanes of traffic." Complaint at ¶ 18. "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). Nowhere in Count 5 does Lester even mention causation. Indeed, it is undeniable that the accident would have occurred regardless of whether SMC had procured insurance for its tractor that covered Lester in this particular instance. SMC's alleged violation of 49 CFR § 387.7, therefore, did not cause Lester's injuries, and Lester's negligence per se should accordingly be dismissed.

Finally, it is worth nothing that Count 6 does not even allege how SMC specifically violated 49 CFR § 387.7. Instead, Lester claims that if SMC's insurer succeeds in arguing that there is not coverage for Martinez or the accident at issue, "then SMC is in breach of its statutory duty and is liable for said negligent breach." Complaint at ¶ 66. Not covering Martinez at any given instance is not a violation of 49 CFR 387.7.

49 CFR 387.7 provides that motor carriers obtain "minimum levels of financial responsibility as set forth in [49 CFR] § 387.9" and that insurance policies "required under this section shall remain in effect continuously until terminated." 49 CFR §§ 387.7(a), 387.7(b)(1). 49 C.F.R. § 387.9, in turn, sets forth a schedule of minimum liability limits (such as $750,000 for for hire carriers transporting nonhazardous property). Considering those regulatory provision, Lester has not alleged that SMC did not have a policy with applicable minimum limits, and he has not

alleged that any such policy lapsed. Instead, he simply claims, without any citation to regulatory language, that the failure of that particular policy to provide coverage to Lester in this particular accident would result in a violation of the statute. Lester has therefore cited no provision in 49 CFR § 387.7 that that outcome would violate, and there is none.

**IV.  Count 7 should be dismissed because SMC is not liable as a matter of law simply because its placard was on the SMC tractor at the time of the accident, and it is otherwise redundant with Count 1.**

Count 7 seeks damages against SMC for Martinez's actions simply because the SMC tractor had SMC placards (or signage) on it at the time of the accident. Lester alleges that "[i]n allowing use of its tractor with its placards remaining in place for the trip at issue, SMC acquiesced to and demonstrated its continuing control over operation of the motor vehicle and operator at all relevant times." Complaint at ¶ 68. SMC is not strictly liable for Martinez's actions as a matter of law simply because SMC's placards were on the tractor Martinez was operating at the time of the accident. Moreover, to the extent that Lester may argue that SMC's placard is another factor showing that Martinez was acting within the scope of his alleged agency with SMC, Lester has already pled SMC's vicarious liability (through respondeat superior) for Martinez's actions in Count 1. The Court should therefore dismiss Count 7.

Lester's distinct count for placard liability raises an outdated doctrine that is inapplicable here. First and foremost, the doctrine applies only to the leasing context. See Jackson v. O'Shields, 101 F.3d 1083, 10867–87 (5th Cir. 1996) (noting the history of placard liability and its basis in Interstate Commerce Commission ("ICC") leasing regulations). Lester has alleged that SMC owned, and therefore did not lease, the tractor at issue here. Complaint at ¶ 12. Second, the underling ICC regulation upon which it was based has long since been twice-amended, thereby

making the doctrine outdated and "no longer in effect." See Ross v. Wall Street Systems, 400 F.3d 478, 479–80 (6th Cir. 2005) (citation omitted) ("In the past, some courts followed a doctrine of 'logo liability,' under which the presence of a carrier's government-issued placard created an irrebuttable presumption that the lease continued in effect. However, the underlying ICC regulations have changed, and this rule is no longer in effect."); see also R. Clay Porter and Elenore Cotter Klinger, The Mythology of Logo Liability: An Analysis of Competing Paradigms of Lease Liability for Motor Carriers, 33 Transp. L. J. 1, 11 (2007). The Court should therefore dismiss Count 7 because it relies upon a doctrine inapposite to the ownership context that, regardless, is no longer applicable.

Moreover, to the extent that Lester may claim that SMC's placement and retention of the placard on the SMC tractor is simply a fact establishing that Martinez was acting as its agent, that allegation would fit within a respondeat superior analysis. See McNeill v. Spindler, 191 Va. 685, 694, 62 S.E.2d 13, 17 (1950) ("The doctrine of respondeat superior rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment."). Lester has already made a claim for SMC's vicarious liability for Martinez's alleged negligence in Count 1. Any argument that SMC is vicariously liable for Martinez's action because its placards were on its tractor would therefore be part of Lester's claims in Count 1. Count 7 should therefore be dismissed as redundant.

**V.    Count 8 should be dismissed because there is no cause of action in fraud for failing to comply with a federal motor carrier regulation.**

Count 8 claims constructive fraud against SMC for its failure to meet "the financial
Page **12** of **18**

responsibility requirements of the Federal Motor Carrier Act." Complaint at ¶ 71. Constructive fraud consists of "a showing by clear and convincing that a false representation of a material fact was made innocently or negligently, and the injured party was damages as a result of his reliance upon the misrepresentation." Mortarino v. Consultant Engineering Services, Inc., 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (citation omitted). "Additionally, '[a] finding of . . . constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon his representation." Id. (quoting Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)). Lester must plead fraud with particularity. F.R. Civ. P. 9(b). Lester, though, has pled none of the elements of constructive here.

As for a false representation, failing to follow a regulation is not an affirmative misrepresentation. Lester alleges no verbal statement whatsoever. Instead, Lester claims that by simply allowing someone to use its tractor, it represented to "the general public that it met the financial responsibility requirements of the Federal Motor Carrier Act." Complaint at ¶ 71. Lester does not even allege that SMC made any representation to Lester specifically. Lester has failed to plead with adequate particularity any allegedly fraudulent statement that SMC made to him specifically.

Moreover, SMC's alleged misrepresentation is of the availability of insurance coverage for this litigation, which was not a present fact but rather a legal question contingent upon the future resolution of companion litigation. See Complaint at ¶ 72 ("In the event that the underlying insurance policy issued by United Specialty Insurance Company does not provide liability coverage to Martinez, then SMC's negligent misrepresentation . . . then SMC is liable to the Plaintiff, as a

Page **13** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 13 of 18   Pageid#: 1472

member of the general public, for his damages caused by the accident.") Even if SMC's allowing the use of its tractor may be deemed a statement concerning insurance coverage (which it is not), that statement was not of a present existing fact and therefore not an adequate basis for fraud. See Sales v. Kecoughtan Housing Co., Ltd., 279 Va. 475, 48, 690 S.E.2d 91, 94 (2010) ("[T]he statement that serves as the foundation for an action in fraud, either actual or constructive, must be a misrepresentation of an existing fact and not the expression of an opinion.") (citing McMillon v. Dryvit Systems, Inc., 262 Va. 463, 471, 552 S.E.2d 364, 368–69 (2001).

As for reliance, Lester does not plead his specific reliance upon any misrepresentation of SMC. Instead, he merely pleads that "the general public" relied upon SMC's representation that it met FMCA financial responsibility requirements and that Lester is a member of the general public. Complaint at ¶ 72. There is no allegation that Lester did anything to show reliance upon SMC's alleged misrepresentation other than the conclusory allegation that "the general public relied" upon that statement. While failing to plead Lester's specific reliance (as opposed to the general public) would justify dismissal, it is compounded by Lester's lack of even implicitly suggesting reliance. Lester cannot seriously contend that he was travelling on I-81 in reliance upon SMC's representation that its tractor met federal insurance requirements.

As for damages, the accident caused Lester's alleged damages, not any alleged misrepresentation of SMC. Again, just as with Lester's claim for negligence per se, regardless of the availability of insurance coverage, Lester would have sustained his alleged bodily injuries. Lester cannot, therefore, establish that the alleged constructive fraud was the proximate cause of his injuries.

Lester's count for constructive fraud should therefore be dismissed because he has not pled

Page **14** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 14 of 18   Pageid#: 1473

any of it elements with requisite specificity. Simply alleging that SMC may have, in the event that SMC's insurer does not provide coverage, misrepresented to "the general public" that it met unspecified "financial responsibility requirements of the Federal Motor Carrier Act," which Lester relied upon in a general sense by driving, causing him unspecified damages, is "too vague, indefinite, and conclusory to state a cause of action." Tuscarora, Inc. v. B.V.A. Credit Corp., 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978); see also id. (affirming sustaining of demurrers to a complaint and amended complaint alleging constructive fraud in which "[t]he identities of the agents, officers, and employees of [the defendant] who are alleged to have perpetrated the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred").

Finally, Lester would not ever be able to plead a count for constructive fraud based on lack of liability insurance because Federal Rule of Evidence 411 expressly precludes the use of liability insurance to establish "whether the person acted negligently or otherwise wrongfully." See F.R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."). Lester's constructive fraud claim hinges upon a lack of liability insurance as the basis for liability in tort. Lester's inability to admit any evidence to establish the alleged constructive fraud makes the claim implausible on its face.

### VI. Count 9 should be dismissed as to SMC because Lester has not pled that Roy Salinas was an agent of SMC.

Lester seeks damages against SMC for its vicarious liability for Roy Salinas's alleged negligence in Count 9. Yet nowhere in the Complaint does Lester allege that Roy Salinas was the agent of SMC. Instead, Lester simply alleges that Roy Salinas directed traffic as Martinez exited

Page **15** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 15 of 18   Pageid#: 1474

the entrance ramp onto the interstate (Complaint at ¶ 76) and that "SMC acquiesced and/or condoned the actions of Roy Salinas (Complaint at ¶ 77). SMC's acquiescing in or condoning Roy Salinas's actions is not sufficient to deem Roy Salinas SMC's agent and SMC therefore liable for that agent's torts committed within the scope of his agency.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." Restatement (Second) of Agency § 1. "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) of Agency § 219 (1). Lester has alleged neither manifestation of SMC's consent for Salinas to act on Salinas's behalf nor consent by Salinas to do so. Without those crucial elements, Lester has pled no agency relationship, and SMC therefore cannot be vicariously liable for Roy Salinas's torts. And, as discussed in Section I above as to Martinez, Lester has similarly not pled any express authorization or subsequent ratification of Roy Salinas's actions by SMC. Lester has therefore failed to state any claim against SMC for Roy Salinas's actions.

## VII. Should the Court not dismiss Counts 6 and 8 for the reasons above, it should dismiss them because they raise the issue of insurance.

Rule 21 provides that "[t]he [C]ourt may . . . sever any claim against a party." See also 7 Wright and Miller, Fed. Practice & Procedure § 1689 (3rd ed.) ("Although the primary significance of Rule 21 is in the context of joinder of parties, it does have an effect on the joinder of claims.") Should the Court not dismiss Counts 6 and 8, it should dismiss them because they raise the issue of insurance and would thus prejudice SMC's defense against Lester's other claims.

As noted above, Federal Rule of Evidence 411 prevents the admission into evidence of insurance "to prove whether the person acted negligently or otherwise wrongfully." Here, the Court would not be able to safeguard a jury's consideration of insurance in determining whether SMC or the other Defendants acted negligently if Counts 6 and 8 remain. Both counts expressly intertwine SMC's alleged torts (either negligence per se or constructive fraud) with insurance. Indeed, both of the counts hinge on whether there was adequate insurance coverage for the SMC tractor when Martinez used it. In other words, there would be no way to prevent the jury from considering the issue of whether insurance would cover the damages that Lester seeks. The Court, then, should dismiss those counts so that they do no prejudice the jury's consideration of the remaining counts.

WHEREFORE, for the foregoing reasons, SMC Transport, LLC, by counsel, requests that the Court dismiss Counts 2, 5, 6, 7, 8, and 9 and the claim for punitive damages against it and that the Court grant any other and further relief that it may deem just and proper.

DATED: June 24, 2016            SMC TRANSPORT LLC

/s/_____
Lawrence A. "Lex" Dunn (VSB No. 30324)
Gibson S. Wright (VSB No. 84632)
Attorneys for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: ldunn@morrismorris.com
       gwright@morrismorris.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing to the following:

Daniel Patrick Frankl
Attorney for Salinas Express, LLC
FRANKL MILLER & WEBB, LLP
1711 Grandin Road SW
Roanoke, VA 24015
(540) 527-3515 – Phone
(540) 527-3520 – Fax
dfrankl@franklmillerwebb.com

David W. Hearn
Attorney for Israel Martinez, Jr.
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804)783-7285 – Phone
(804)783-7291 – Fax
dhearn@sandsanderson.com

Johneal Moore White
Melissa Walker Robinson
Victor S. Skaff, III
Attorney for Plaintiff
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W., Suite 100
Roanoke, VA 24016
(540)767-2206 – Phone
(540)767-2220 – Fax
jwhite@glennrob.com

/s/_____
Lawrence A. "Lex" Dunn (VSB No. 30324)
Attorney for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: gwright@morrismorris.com

Page **18** of **18**

Case 7:15-cv-00665-GEC   Document 73   Filed 06/24/16   Page 18 of 18   Pageid#: 1477