IN THE UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRANDON LESTER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:15-cv-00665-GEC |
| | ) | |
| SMC TRANSPORT, LLC, | ) | |
| | ) | |
| ISRAEL MARTINEZ, JR., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SALINAS EXPRESS, LLC, | ) | |
| | ) | |
|     Defendants. | ) | |

### DEFENDANT, SALINAS EXPRESS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

COMES NOW the defendant, Salinas Express, LLC, (hereinafter "Salinas") by counsel, and moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the claims set forth in Counts 3 and 4, and the request for punitive damages set forth in Counts 2 and 9, as set forth in Brandon Lester's First Amended Complaint, on the grounds that Counts 3 and 4 each fail to state a claim upon which relief may be granted under Virginia law and Counts 2 and 9 fail to state a claim upon which relief can be granted for punitive damages under Virginia Law. In support thereof, Defendant states as follows:

### SUMMARY OF ALLEGATIONS

According to the allegations in the plaintiff's First Amended Complaint, on or about October 26, 2015, before sunrise, the plaintiff was operating a motor vehicle on Interstate 81 at

approximately mile marker 158.1 in Botetourt County, Virginia. (Amd. Comp. at ¶ 11.) At approximately the same time, Plaintiff alleges that Martinez was operating a tractor registered and owned by SMC, while towing another disabled tractor leased to Salinas Express. Plaintiff alleges that Martinez was making a U-turn onto I-81 out of the entrance ramp of a rest stop at approximately mile marker 158.1 in Botetourt County. (Amd. Comp. at ¶ 12.)

According to Plaintiff, prior to agreeing to travel on this job to Virginia for Salinas Express, Martinez had allegedly completed his employment application and drug testing for the company during the summer of 2015 and had been paid in cash "under the table' to assist in driving on other jobs. (Amd. Comp. ¶ 13.) Roy Salinas, who accompanied Martinez and who was allegedly in the course and scope of his employment with Salinas Express and SMC, was directing Martinez and was waiving or signaling Martinez to drive the SMC tractor out of the entrance ramp of the rest stop. (Amd. Comp. ¶ 14.) Martinez allegedly blocked all lanes of traffic on I-81 south when making a U-turn, and Plaintiff's vehicle impacted with Martinez's vehicle. (Amd. Comp. at ¶ 18.) Another vehicle traveling southbound on I-81 then hit the plaintiff's vehicle, allegedly causing Plaintiff to be ejected from his vehicle and suffer bodily injuries. (Amd. Comp. ¶ 20-22.)

Plaintiff alleges that at all times relevant to this claim, Martinez was acting as an employee and/or agent of both SMC and Salinas Express and was operating (or towing) a tractor entrusted to him by both SMC and Salinas Express. (Amd. Comp. at ¶ 23-24.) There was further allegedly a joint agreement between Salinas Express and SMC wherein Salinas used SMC's tractor in order to tow the disabled Salinas Express tractor back to Texas after it broke down in Virginia. (Amd. Comp. at ¶ 25.) At the time of the collision, the SMC truck Martinez was driving allegedly bore SMC's placards. (Amd. Comp. at ¶ 23.) Martinez had also

allegedly enabled the lights and flashers of the Salinas Express tractor in tow. (Amd. Comp. at ¶ 24.)

As part of an allegedly previous agreement between SMC and Salinas, a co-owner of SMC, Sergio Cuellar ("Cuellar"), drove the SMC tractor involved in the accident to a truck stop in Texas to show Roy Salinas, Martinez, and Eduardo Lozano, another Salinas Express employee, how to hook another tractor to the towing equipment attached to the SMC tractor. (Amd. Comp. at ¶ 27.) Cuellar then purportedly attached a Salinas Express tractor to the SMC tractor. (Amd. Comp. at ¶ 29.) In so doing, Cuellar neither removed SMC's placard from the SMC tractor nor told Martinez that he had not yet contacted SMC's insurer to the SMC tractor to SMC's policy. (Amd. Comp. at ¶ 29.) Martinez and Salinas then allegedly towed the Salinas Express tractor to Virginia, and the Salinas Express tractor was then used to haul the Salinas trailer that the broken down Salinas Express tractor had been hauling. (Amd. Comp. at ¶ 30.)

## STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." In re Cable & Wireless, PLC, 321 F. Supp.2d 749, 759 (E.D. Va. 2004); Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). The Court can consider any documents attached to the complaint or incorporated in the complaint by reference. Express Carwash of Charlottesville, L.L.L.P. v. City of Charlottesville, 320 F. Supp.2d 466, 470 (W.D. Va. 2004). The Court must "assume the truth of all facts alleged in



{3587/0003/ 00137846.DOCX }

3
Case 7:15-cv-00665-GEC   Document 77   Filed 06/27/16   Page 3 of 19   Pageid#: 1507

the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations ... [but] need not accept the legal conclusions drawn from the facts ... [or] accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., 213 F.3d at 180.

**ARGUMENT AND AUTHORITIES**

**I. Count 3 of the Amended Complaint Should be Dismissed with Prejudice as the Plaintiff has Not Alleged Sufficient Facts to Proceed on a Claim of Negligent Entrustment Against Salinas.**

Plaintiff seeks recovery against Salinas in Count 3 under a theory of negligent entrustment, alleging Salinas owed a duty to Plaintiff to ensure that Martinez was competent and fit to drive a tractor. (Amd. Comp. at ¶ 47) In order to successfully state a claim for negligent entrustment against Salinas, Lester must establish that Salinas "knew, or had reasonable cause to know, that [it] was entrusting [its] car to an unfit driver likely to cause injury to others." Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972). Further, there can be no recovery for negligent entrustment unless the reason the driver was unfit was the proximate cause of the accident. Hack v. Nester, 241 Va. 499, 503-504, 404 S.E.2d 42, 43-44 (1990); *See also* Laughlin v. Rose, 200 Va. 127, 132-133, 104 S.E.2d 782, 786 (1958). Because Lester has not alleged sufficient facts to show Martinez was an unfit driver likely to cause injury to others and that Martinez's unfit quality proximately caused the accident, his claim for negligent entrustment should be dismissed.

Lester's allegations that Martinez had a "history of causing accidents," "failing to adhere to state and federal regulations governing the operation of his vehicle," and was "not properly trained and/or was incompetent to operate a tractor and tow another tractor," does not establish causation. (Amd. Comp. at ¶¶ 48-49.) To recover for negligent entrustment, these

allegedly unfit qualities must have proximately caused the subject accident. There is no allegation that Martinez's unfit qualities caused the accident, nor are there sufficient facts pled to suggest that these purportedly unfit qualities are linked to the cause of Lester's accident. For example, if Lester pled that Salinas knew that Martinez habitually received speeding tickets, and speed had been a factor in the accident, then perhaps Lester could claim negligent entrustment. However, Lester's First Amended Complaint lacks any such facts that would link Martinez's allegedly unfit qualities to the cause of the subject accident.

Based on the facts set forth in the First Amended Complaint, it is clear that Lester has not pled sufficient facts to support Martinez as being unfit to drive nor does he properly plead a causal link between Martinez's alleged unfit qualities and the accident. As such, Count 3 of the Amended Complaint must be dismissed with prejudice.

**II. Count 4 of the Amended Complaint Should be Dismissed with Prejudice as the Plaintiff has Not Alleged Sufficient Facts to Proceed on a Claim of Negligent Hiring Against Salinas.**

Plaintiff also seeks recovery against Salinas in Count 4 under a theory of negligent hiring, alleging Salinas owed a duty to Lester to "ensure that Martinez was competent and fit to drive tractors," "ascertain the qualifications and competence of Martinez's specially (sic) because Martinez's occupation requires skill and experience," and investigate Martinez's "competency to drive and ascertain his driving record." (Amd. Comp. at ¶¶ 52-54.) Salinas allegedly breached its duties to the plaintiff by hiring Martinez despite the fact that Martinez had a "terrible driving history" and was "incompetent and unfit to drive a tractor in interstate commerce." (Amd. Comp. at ¶ 55.) Such allegations are insufficient to set forth a cause of action for negligent hiring and this claim should be dismissed.



The cause of action for negligent hiring is based on the principle that "one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." Southeast Apts. Mgmt., Inc. v. Jackman, 257 Va. 256, 260, 513 S.E.2d 395, 397 (1999). "Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." Id., *citing* Ponticas v. K.M.S. Invs., 331 N.W.2d 907, 911 (Minn. 1983). Mere proof of the failure to investigate a potential employee's background is not sufficient to establish an employer's liability for negligent hiring. Majorana v. Crown Cent. Petroleum, 260 Va. 521, 531, 539 S.E.2d 426, 431 (2000).

Simply alleging Martinez had a "terrible driving history" and was "incompetent and unfit to drive a tractor in interstate commerce" falls short of the specificity required to plead Martinez's alleged unfit qualities/propensities to support a claim for negligent hiring against Salinas. A purportedly terrible driving record, by itself, does not make it foreseeable to Salinas that Martinez would pose a threat of injury to others. There are no facts alleged that explain what made Martinez's driving record so "terrible" – were there ten speeding tickets, several hit and run accidents, a history of drunken driving, or simply numerous over-weight tickets? The content of Martinez's driving record is a key fact that must be alleged – without alleging the content of his driving record, there can be no claim that it should have been foreseeable to Salinas that Martinez would pose a threat of injury to others.



Further, Lester fails to explain how Martinez was purportedly "incompetent and unfit to drive a tractor in interstate commerce." Without alleging how Martinez was incompetent and unfit, and that Salinas knew or should have discovered through investigation those qualities, Lester's claim for negligent hiring cannot go forward. Salinas requests this Court dismiss Count 4 of Lester's First Amended Complaint with prejudice due to his failure to allege sufficient facts to support a claim for negligent hiring.

### III. Plaintiff's Claims for Punitive Damages, as Alleged in Counts 2 and 9, Should be Dismissed with Prejudice.

This Court should grant Defendant's Motion to Dismiss and dismiss with prejudice the plaintiff's claim for punitive damages as set forth in Counts 2 and 9 of the First Amended Complaint. As set forth herein, the plaintiff's First Amended Complaint fails to set forth facts sufficient to state a claim for punitive damages against Salinas under the laws of the Commonwealth of Virginia. Because of this failure, the Court should grant Salinas' Motion to Dismiss and dismiss with prejudice the plaintiff's claims for punitive damages.

In Virginia, punitive damages are generally disfavored and may be awarded "only in cases involving the most egregious conduct." Bowers v. Westvaco Corp., 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992) (citing Philip Morris, Inc. v. Emerson, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988)). Indeed, proof of even gross negligence is insufficient to give rise to a claim for punitive damages under Virginia law. Cummings v. Fisher-Price, Inc., 857 F. Supp. 502, 505 (W. D. Va. 1994) (citing Owens-Corning Fiberglass Corp. v. Watson, 243 Va. 128, 145, 413 S.E.2d 630 (1992)); Doe v. Isaacs, 265 Va. 531, 538, 579 S.E.2d 174, 178 (2003). See also Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999) ("the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence" sufficient to give rise to claim for punitive damages).

Virginia courts' reluctance to recognize a claim for punitive damages except in cases involving "the most egregious conduct" rests on the premise that such damages "are something in addition to full compensation." Baker v. Marcus, 201 Va. 905, 909, 114 S.E.2d 617, 620 (1960). They are "something not given as plaintiff's due, but for the protection of the public, as a punishment to [a] defendant, and as a warning and example to deter him and others from committing like offenses." Id. (quoting Zedd v. Jenkins, 194 Va. 704, 707, 74 S.E.2d 791, 793 (1953)).

"Negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages in a personal injury case." Booth v. Robertson, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). To establish "willful and wanton negligence," a plaintiff must allege and prove "an action [by a defendant] undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Woods v. Mendez, 265 Va. 68, 76-77, 574 S.E.2d 263, 268 (2003). "Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." Alfonso, 257 Va. at 545, 514 S.E.2d at 618. Accord Giant of Va., Inc. v. Pigg, 207 Va. 679, 686, 152 S.E.2d 271, 277 (1967) ("Willful or wanton conduct imports knowledge and consciousness that injury will result from the act done"). "[W]here the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible." Baker, 201 Va. at 909, 114 S.E.2d at 621.



In addition to the foregoing, a plaintiff's mere conclusory allegations of "willful and wanton conduct" sufficient to evince "a conscious disregard for the rights of others," without sufficient facts to support them, are not enough to sustain a claim for punitive damages under the law of Virginia. Russo v. White, 241 Va. 23, 28, 400 S.E.2d 160, 163 (1991); ICM Enterprises, L.C. v. 1425 E. Cary St. Associates, 64 Va. Cir. 237, 240 (City of Richmond 2004); Johnson v. Capital Area Permanente Group, 30 Va. Cir. 107, 112 (Fairfax County 2003); Napoli v. Southworth, 25 Va. Cir. 511, 512-13 (City of Fredericksburg 1991); Smith v. Woodward, 19 Va. Cir. 436, 436-37 (Smyth County 1990).

Illustrating the level of conduct necessary to give rise to a claim for punitive damages in Virginia, and the result to be reached in this case, the plaintiffs in Isaacs filed suit against "John Doe" for injuries they received as the result of a motor vehicle accident. According to the plaintiffs, who were husband and wife, they were struck from the rear by an unknown motorist at an intersection in Virginia Beach. Isaacs, 265 Va. at 533-34, 579 S.E.2d at 176. Mrs. Isaacs described the impact as "really tremendous" and "awful." Id. The collision "pushed the back end of the plaintiffs' car forward." Id. The floor in the rear "popped up." Id. at 535, 579 S.E.2d at 176. "The front seats ended up all the way down on the floorboard." Id.

After the collision, Mr. Isaacs exited his vehicle, where he was met by the defendant tortfeasor, who was approaching on foot. Id. at 534, 579 S.E.2d at 176. The defendant "kind of staggered" as he approached Mr. Isaaces. Id. The defendant's condition was such that Mr. Isaacs "was concerned about him." Id. The defendant asked Mr. Isaacs whether anyone was injured in the accident. Id. Mr. Isaacs responded that his wife was hurt. Id. At this point, the defendant moved "into the doorway" of the plaintiffs' vehicle and "started to shake the car, for whatever reason." Id. It looked to Mr. Isaacs like the defendant "was having trouble standing



{3587/0003/ 00137846.DOCX }

9

where he was." Id. "[S]luring" his speech, the defendant asked Mr. Isaacs not to call the police. Id. Mr. Isaacs twice rejected this request, responding each time that his wife was injured. Id.

Next, the defendant suggested that he and Mr. Isaacs move their respective vehicles out of the roadway so that they could "talk." Id. Mr. Isaacs responded that he could not talk further. Id. The defendant replied that he would "run up and get [his] car" and bring it down to the accident scene. Id. Thinking that the defendant would care for his wife while he went for help, Mr. Isaacs walked across the street to call emergency personnel. Id. Mrs. Isaacs remained alone in the plaintiffs' vehicle, "feeling abandoned and alone and scared." Id. Neither of the plaintiffs ever saw or heard again from the defendant. Id.

At trial, a jury, over the defendant's objection, awarded the plaintiffs both compensatory and punitive damages against "John Doe." Id. at 533, 579 S.E.2d at 175. On appeal, the plaintiffs argued that the trial court did not err in submitting the issue of punitive damages to the jury. Id. at 535, 579 S.E.2d at 177. According to the plaintiffs, the defendant's conduct in "leaving the scene under the circumstances of this case is alone grounds for an award of punitive damages." Id. "[B]ecause the defendant 'knew the seriousness of' their injuries, 'he enhanced their damages by virtue of his leaving,' committing 'felony hit-and-run with the intent to place his self interest above' [the plaintiffs'] needs." Id. These actions, the plaintiffs contended, "were 'sufficient to permit the jury to find [the defendant's] conduct so willful and wanton as to show a conscious disregard of the plaintiffs' rights.'" Id.

The Supreme Court of Virginia did not agree. Id. Analyzing its existing precedent on the issue of punitive damages, including that setting forth the nature and purpose of a punitive damages award, the Supreme Court held the defendant's conduct, considered in its entirety,

"was not so willful or wanton as to show a conscious disregard for the rights of others." Id. at 538, 579 S.E.2d at 178.

> Clearly, the defendant's actions, involving violation of traffic laws and rules of the road, demonstrated a disregard of prudence to the level that the safety of others was completely neglected. But this conduct amounts to gross negligence, which shocks fair-minded people; it is less than willful recklessness. See Harris v. Harman, [253 Va. 336, 340, 486 S.E.2d 99, 101 (1997)]. The required "actual or constructive consciousness that injury will result from the act done or omitted," Alfonso, 257 Va. at 545, 514 S.E.2d at 618, is lacking in the proof.[1]
>
> At most from the plaintiffs' standpoint, the defendant did not keep a proper lookout for vehicles nearly stopped ahead of him, he did not keep his vehicle under proper control, he probably was intoxicated to some extent, and he feloniously left the scene of the accident in violation of [Virginia] Code § 46.2-894. There is no evidence that defendant exceeded the speed limit or a reasonable speed under the circumstances. He was driving on his proper side of the street, apparently operating a properly functioning vehicle. In sum, the defendant's behavior was not the "egregious" conduct spoken of in our cases.

Id.

Not willing to concede the point, the plaintiffs argued that the defendant's actions in leaving the scene of the accident caused Ms. Isaacs "to be fearful" and feel "scared and abandoned." Id. Both plaintiffs also were "greatly inconvenienced." Id. Continuing, the plaintiffs asserted that the defendant, by his actions:

> intentionally disregarded the plaintiffs' rights to get the appropriate information from the defendant, to have a proper investigation of the accident, to have criminal and civil liabilities addressed under our rule of law, to receive timely medical care and assistance, and to avoid the annoyance and outrage any

---

[1] Cf. Etherton v. Doe, 268 Va. 209, 597 S.E.2d 87 (2004) (defendant in personal injury action involving road rage exhibited sufficient "actual or constructive consciousness that injury" would result from his actions sufficient to warrant jury's consideration of punitive damages.

{3587/0003/ 00137846.DOCX }

11
Case 7:15-cv-00665-GEC   Document 77   Filed 06/27/16   Page 11 of 19   Pageid#: 1515

> injured plaintiff would feel from the abandonment and flight of
> the defendant responsible for the accident and injury.

Id. at 538-39, 579 S.E.2d at 178-79. The Supreme Court rejected this argument. As the Supreme Court recognized, the plaintiff's contention "overlooks the settled principle that punitive damages 'are something in addition to full compensation, and something not given as plaintiff's due.' In other words, punitive damages are allowed not so much as compensation for a plaintiff's loss as to warn others. Indemnity for a plaintiff's losses is the function of compensatory, not punitive damages." Id. at 539, 579 S.E.2d at 179 (internal citations omitted). Accordingly, the Supreme Court reversed the trial court's judgment in favor of the plaintiffs' on the issue of punitive damages and entered final judgment on that issue in favor of the defendant.[2] Id. *See also* Puent v. Dickens, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993) (defendant's conduct not sufficiently egregious to support punitive damages award); Hack at 507, 404 S.E.2d at 45 (same); Baker, 201 Va. at 909, 114 S.E.2d at 620-21 (same).

### a. Lester fails to allege sufficient facts to support a claim for punitive damages in Count 2 of the First Amended Complaint.

The actions upon which the plaintiff predicates his claim for punitive damages against Martinez involve nothing more than allegations of recklessness and negligence. (See, e.g., Amd. Compl. at ¶¶ 42 ("Martinez was willfully and wantonly negligent..."); Amd. Compl. at ¶ 45 (Martinez "demonstrated an intentional, willful and flagrant disregard for the safety [of others], constituting willful negligence.") Plaintiff's claim rests on Martinez's allegedly illegal

---

[2] In reaching its holding, the Supreme Court expressly rejected the plaintiffs' reliance on the opinion of the United States Court of Appeals for the Fourth Circuit in Clark v. Torres, 1992 U.S. Dist. LEXIS 2736 (4th Cir. Feb. 27, 1992). In Clark, the Court ruled that "[w]here the victim's proof demonstrates hit-and-run accompanied by physical injury and outrage from the knowledge that the tortfeasor has run from the consequence of her tort, it is not error for the jury to consider punitives." Clark, 1992 U.S. Dist. LEXIS at *5-6.

turn "before sunrise out of an I-81 entrance ramp at a low rate of speed onto [I-81], thereby blocking the southbound lanes of travel." (Amd. Comp. at ¶ 42.) An illegal U-turn falls well below the level of egregious behavior required to merit a claim for punitive damages, and the Virginia Supreme Court has previously held that "the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence" sufficient to give rise to claim for punitive damages. Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999).

Further, Lester does not allege the type of egregious conduct or "actual or constructive consciousness" on the part of Martinez sufficient to entitle the plaintiff to assert a claim for punitive damages. No facts have been alleged that Martinez knew that his conduct would probably injure another person. In fact, Lester alleged facts that tend to show that Martinez was concerned for those around him. Lester alleged that Martinez relied on Roy Salinas to assist and direct him while driving. (Amd. Comp. at ¶ 14.) Martinez also allegedly engaged the lights and flashers of the Salinas tractor he was towing as a safety precaution. (Amd. Comp. at ¶ 15.) He also allegedly received instruction from Cuellar in how to tow a tractor with the SMC tractor prior to attempting to tow the broken down Salinas tractor. (Amd. Comp. at ¶ 27.) These safety precautions, even if they were ultimately insufficient, show a concern for the safety of others that bars Lester's claim for punitive damages.

Also, Lester's allegation that "Martinez again attempted to make a U-turn onto I-81 South from the entrance ramp" after first responders took Lester from the scene is irrelevant. (Amd. Comp. at ¶ 44.) Martinez's behavior after the accident occurred is entirely unconnected to his actions at the time of the accident. The only allegations relevant to the claim of willful or wanton behavior are that Martinez allegedly "turne[d] his vehicle before sunrise out of an I-81 ramp at a

low rate of speed on [the] major highway, thereby blocking the southbound lanes of travel" (Amd. Comp. at ¶ 42) and that Martinez purportedly "knew of the very limited visibility of the entrance ramp for drivers on the highway caused by a rise located immediately before the entrance ramp." (Amd. Comp. ¶ 43.) Those facts are woefully insufficient to establish a claim for punitive damages.

Finally, even if Martinez's behavior were willful and wanton as pled, Lester has not pled that Salinas participated, authorized, or ratified the allegedly willful and wanton conduct, as required for assessing punitive damages against Salinas for the willful and wanton conduct of its alleged agent. Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963) (noting that punitive damages "'cannot be awarded against a master or principal for the wrongful act of his servant in which he did not participate, and which he did not authorize or ratify'") (quoting Hogg v. Plant, 145 Va. 175, 181, 133 S.E. 759, 760 (1926)); see also Hogg, 145 Va. at 180, 133 S.E. at 760 ("'A principal, therefore, though of course liable to make compensation for the injury done by his agent, with the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent.'") (quoting Lake Shore R. Co. v. Prentice, 147 U.S. 101, 107 (1893)). Without alleging such participation or alleged ratification, Lester cannot recover punitive damages against Salinas, and his allegation that "Salinas Express acquiesced and/or condoned the actions of Martinez making them likewise responsible for said damages" must fail. (Amd. Comp. at ¶ 46.)

First, Lester has pled no facts to support his claim that Salinas allegedly acquiesced "and/or" condoned Martinez's action. As such, those conclusory statements alone are not enough to establish that Salinas did, in fact, acquiesce or condone the specific alleged act of Martinez making a U-turn out of an exit ramp onto I-81.

Second, "acquiescence" or "condon[ing]" is not the same as ratification. "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge, or, if upon learning of the act, he fails promptly to disavow it." Kilby v. Pickurel, 240 Va. 271, 275, 396 S.E.2d 666, 668–69 (1990) (internal citation omitted). Here, Lester has not plead that Salinas received any benefit from Martinez's decision to U-turn onto I-81 with full knowledge of the plan, and logic presumes that Salinas could not accept any benefit from an act that led to the accident at issue. Similarly, Lester has not pled any failure of Salinas to disavow Martinez's U-turn. For example, Lester has not pled that Martinez called Salinas to inform it of his plan to make a U-turn onto I-81, which plan Salinas could then have promptly disavowed. Once the accident had occurred, there was nothing for Salinas to disavow, as the accident had already happened and Martinez's actions were complete. Lester has pled no facts to suggest that Salinas knew or should have known that Martinez intended to make a U-turn out of the exit ramp and that Salinas subsequently failed to disavow the action. And, once the accident occurred, it is clear that there was no benefit for Salinas to receive or action to disavow.

### b. Lester fails to allege sufficient facts to support a claim for punitive damages in Count 9 of the First Amended Complaint.

Plaintiff's claim for punitive damages in Count 9 rests upon an allegation that Roy Salinas was negligent in directing Martinez to drive the "SMC tractor out of the entrance ramp of the I-81 rest stop rather than exit through the exit ramp" of the facility, and that Salinas Express is vicariously liable for his actions allegedly taken during the course and scope of his employment with Salinas. (Amd. Comp. at ¶¶ 73, 75.) However, Lester's allegations against Roy Salinas involve nothing more than allegations of recklessness and negligence. (See, e.g., Amd. Comp. at ¶¶ 73 ("Roy Salinas was negligent..."); Amd. Comp. at ¶ 76 (Roy Salinas "demonstrated an



intentional, willful and flagrant disregard for the safety [of others], constituting willful negligence.")

Based on the case law set forth above, simply throwing in the magic words of "willful negligence" and "flagrant disregard" is insufficient to sustain a claim for punitive damages. There are no allegations that Roy Salinas engaged in the type of egregious conduct or "actual or constructive consciousness" sufficient to entitle the plaintiff to assert a claim for punitive damages. No facts have been alleged that Roy Salinas knew that his conduct would probably injure another person, and as such, Lester's claim for punitive damages must fail.

Further, even if Roy Salinas' behavior was willful and wanton as pled, Lester has not pled that Salinas Express participated, authorized, or ratified the allegedly willful and wanton conduct, as required for assessing punitive damages against Salinas for the willful and wanton conduct of its alleged agent. Freeman at 358, 131 S.E.2d at 414. Without alleging such participation or alleged ratification, Lester cannot recover punitive damages against Salinas Express, and his allegation that "Salinas Express acquiesced and/or condoned the actions of Martinez making them likewise responsible for said damages" is inadequate. (Amd. Comp. at ¶ 77.)

First, Lester has pled no facts to support his claim that Salinas Express allegedly acquiesced "and/or" condoned Roy Salinas' action. As such, those conclusory statements alone are not enough to establish that Salinas Express did, in fact, acquiesce or condone the specific alleged act of Roy Salinas directing Martinez to drive the SMC tractor out of the entrance ramp of the rest stop.

Second, "acquiescence" or "condon[ing]" is not the same as ratification. "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge, or, if upon learning of the act, he fails promptly to disavow it." Kilby at 275, 396

S.E.2d at 668–69 (internal citation omitted). Here, Lester has not pled that Salinas Express received any benefit from Roy Salinas' decision to direct Martinez to drive the tractor out of the entrance ramp of the rest stop with full knowledge of the plan, and logic presumes that Salinas Express could not accept any benefit from an act that led to the accident at issue. Similarly, Lester has not pled any failure of Salinas Express to disavow Roy Salinas' direction of Martinez. For example, Lester has not pled that Roy Salinas called Salinas Express to inform it of his plan to direct Martinez to drive out of the exit ramp of the rest stop, which plan Salinas Express could then have promptly disavowed. Once the accident had occurred, there was nothing for Salinas Express to disavow, as the accident had already happened and Roy Salinas' actions were complete. Lester has pled no facts to suggest that Salinas Express knew or should have known that Roy Salinas intended to direct Martinez to drive the tractor out of the entrance ramp of the rest stop and that Salinas Express subsequently failed to disavow the action. And, once the accident occurred, it is clear that there was no benefit for Salinas Express to receive or action to disavow.

As the foregoing authorities demonstrate, Lester has not stated a claim against Salinas Express for punitive damages under Counts 2 and 9 of the Amended Complaint. Therefore, the plaintiff's First Amended Complaint fails to state a claim against Salinas upon which punitive damages can be awarded under Virginia law. This Court should grant this Motion to Dismiss and dismiss the claims for punitive damages set forth in Counts 2 and 9 with prejudice.

## CONCLUSION

For the foregoing reasons, and for such other reasons as may be expressed either orally or in writing subsequently hereto, Defendant Salinas Express, LLC, respectfully moves this Court to dismiss with prejudice the claims as set forth in Counts 3 and 4 of the First Amended

{3587/0003/ 00137846.DOCX }

Complaint and the plaintiff's claim for punitive damages in Counts 2 and 9. The defendant additionally requests such further and other relief as the Court deems just and proper.

SALINAS EXPRESS, LLC

By: \_\_/s/*Daniel P. Frankl*_____
               Of Counsel

Daniel P. Frankl (VSB No. 26741)
 *dfrankl@franklmillerwebb.com*
Audra M. Dickens (VSB No. 82379)
 *adickens@franklmillerwebb.com*
FRANKL MILLER & WEBB, LLP
1711 Grandin Road
Post Office Box 4126
Roanoke, Virginia 24015
540-527-3515 Telephone
540-527-3520 Facsimile
Counsel for Salinas Express, LLC



# CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing to the following:

Johneal Moore White (VSB No. 74251)
  jwhite@glennrob.com
Melissa Walker Robinson (VSB No. 29065)
  mrobinson@glennrob.com
Victor S. Skaff, III (VSB No. 40054)
  vskaff@glennrob.com
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W., Suite 100
Roanoke, VA 24016
(540)767-2206 – Phone
(540)767-2220 – Fax
Attorney for Plaintiff

Lawrence A. "Lex" Dunn (VSB No. 30324)
  LDunn@morrismorris.com
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Attorney for SMC Transport, LLC

David W. Hearn, Esquire (VSB# 37347)
  dhearn@sandsanderson.com
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804)783-7285 – Phone
(804)783-7291 – Fax
Attorney for Israel Martinez, Jr.

                                                                   _/s/ *Daniel P. Frankl*_
                                                                        Of Counsel



{3587/0003/ 00137846.DOCX }