IN THE UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

BRANDON LESTER, )
)
    Plaintiff, )
)
v. ) Civil Action No.7:15-CV-0665
)
SMC TRANSPORT, LLC, )
)
ISRAEL MARTINEZ, JR., )
)
and )
)
SALINAS EXPRESS, LLC )
)
    Defendants. )
)

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Defendant Salinas Express, LLC ("Salinas"), by counsel, files this Brief in Opposition to Plaintiff Brandon Lester's ("Lester") Partial Motion for Summary Judgment. For the reasons set forth below, Salinas respectfully urges this Court to deny Plaintiff's motion in its entirety.

## FACTS

Numerous erroneous conclusions and assumptions have been made by Plaintiff in his Brief in Support of Partial Summary Judgment. Plaintiff's entire motion revolves around the ownership of a vehicle and the employment status of the individuals involved in this accident. Salinas' evidence will show that Salinas does not have regular employees; rather, it uses independent contractors/owner operators for dispatched loads. (Exhibit A to Lester's Brief, p. 9, l. 25, p. 17 l. 11-14 and Exhibit 1, Affidavit of Rudy Salinas, P. 6.) In approximately 2001, Rudy Salinas ("Rudy") purchased a 1988 Peterbilt tractor that was titled in his name and used personally by him



until he gifted the tractor to his father in 2008 or 2009. (Exhibit 1, Affidavit of Rudy Salinas, P. 7.) Then, in approximately 2014, Rudy's father agreed to sell the 1988 Peterbilt tractor to Roy Salinas ("Roy"); and at the time of the subject accident, Roy was in the process of purchasing the tractor from Rudy's father. (Exhibit A to Lester's Brief, p. 13, l. 4-10, Exhibit C to Lester's Brief, p. 7, l. 14-23, Exhibit 1, Affidavit of Rudy Salinas, P. 8 & 9 and Exhibit 2, Affidavit of Roy Salinas, P. 3.) Upon his agreement to purchase the tractor, Roy became responsible for all maintenance and care of the 1988 Peterbilt tractor, and was responsible for such care at the time of the subject accident. (Exhibit 1, Affidavit of Rudy Salinas. P. 10 and Exhibit 2, Affidavit of Roy Salinas, P. 5.)

At the time Roy's tractor broke down in Botetourt County, he was under dispatch by Salinas and was in the process of taking a load from Maryland to Laredo, Texas. (Exhibit 2, Affidavit of Roy Salinas, P. 6.) Roy notified Rudy/Salinas that his tractor had broken down. (Exhibit 2, Affidavit of Roy Salinas, P. 6.) As a result of Roy's tractor becoming disabled, Rudy/Salinas instructed Eduardo Lozano ("Lozano") to return to Virginia to pick up the trailer hitched to Roy's disabled tractor and finish the delivery. (Exhibit B to Lester's Brief, p. 18, l. 16-21, Exhibit 1, Affidavit of Rudy Salinas, P. 12 and Exhibit 3, Affidavit of Eduardo Lozano, P. 5.) Lozano was the only Salinas independent contractor/owner operator assigned by Salinas to return to Virginia in any capacity. (Exhibit 1, Affidavit of Rudy Salinas, P. 13.) Lozano finished delivering the load that Roy started and, in fact, only Lozano was paid by Salinas for the remainder of the delivery of the load that previously had been attached to Roy's disabled tractor. (Exhibit A to Lester's Brief, p. 66, l. 18-20 and p. 52, l. 9-13.)

On his return trip from Texas or upon his return to Texas, Roy called Israel Martinez ("Martinez") and Art Gutierrez ("Gutierrez") asking them to help him recover his disabled tractor

as a personal favor. (Exhibit 2, Affidavit of Roy Salinas P. 7 & 8.) Salinas had no knowledge that Martinez or Gutierrez accompanied Roy to Virginia to recover his disabled tractor until after the subject accident. (Exhibit A to Lester's Brief, p. 44, l. 17-22, p. 47, l. 18-20, Exhibit 1, Affidavit of Rudy Salinas, P. 15 & 16.) Roy also contacted Sergio Cuellar ("Cuellar"), an owner of SMC Transport, LLC ("SMC") on his return trip to Texas or upon his return to Texas, who permitted him to borrow an SMC tractor, with a towing hitch attached, so he could return to Virginia to pick up his disabled tractor. (Exhibit 2, Affidavit of Roy Salinas, P. 9.) Salinas had no knowledge that Roy borrowed a tractor from SMC which he intended to drive back to Virginia to recover his disabled tractor. (Exhibit A to Lester's Brief, p. 45, l. 1-7, Exhibit 1, Affidavit of Rudy Salinas, P. 14.) Salinas was also unaware that Lozano accompanied Roy, Martinez and, ultimately, Gutierrez on his return trip to Virginia or that Lozano made a sudden decision to allow his tractor to be towed back to Virginia by the SMC tractor Roy borrowed until after the subject accident. (Exhibit 1, Affidavit of Rudy Salinas, P. 17 & 18, Exhibit 2, Affidavit of Roy Salinas, P. 12, 13, 14, 15 and Exhibit 3, Affidavit of Eduardo Lozano P. 8 & 13.)

Upon arrival at the Botetourt County rest area, Lozano's tractor was unhooked from the SMC tractor, and Lozano then hooked his tractor up to the trailer that had been attached to Roy's disabled tractor thereby allowing him to complete the delivery of that load to Laredo, Texas. (Exhibit 3, Affidavit of Eduardo Lozano, P. 11.) Once the trailer was hooked up to Lozano's tractor, Lozano pulled his tractor-trailer forward into a separate parking space in the rest area. (Exhibit 2, Affidavit of Roy Salinas, P. 17 and Exhibit 3, Affidavit of Eduardo Lozano, P. 12 & 18.) Lozano had no involvement in the recovery of Roy's disabled tractor or the operation of the SMC tractor at the scene of the accident. (Exhibit 2, Affidavit of Roy Salinas, P. 18 and Exhibit 3, Affidavit of Eduardo Lozano, P. 17 & 18.)



FRANKL
MILLER
& WEBB LLP

A number of additional factual depositions still need to be taken, including a number of various factual witnesses to the subject accident. Given more depositions are forthcoming, and based on the facts thus far developed, taken in the light most favorable to Salinas, it is clear that there are numerous material facts still in dispute and that any grant of summary judgment at this time would be inappropriate.[1]

## STANDARD OF REVIEW

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for the nonmoving party. Id. As such, summary judgment is only appropriate if there can be but one reasonable conclusion as to the verdict. Id. As the Fourth Circuit explained,

> We must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

Brown v. Triton Security, et al., 2005 U.S. Dist. LEXIS 25885 at *7 (E.D. Va. Oct. 19, 2005), citing Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in* Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993). Given this standard, the plaintiff's summary judgment motion must be denied.

## ARGUMENT AND AUTHORITIES

**I. Disputed material facts exist regarding ownership and control of the disabled tractor and whether it was in use at the time of the accident in question.**

---

[1] Additional material facts are still in dispute regarding how the subject accident occurred and how the plaintiff sustained his alleged injuries. However, given those facts are not relevant to this Court's analysis of the claims Plaintiff is seeking partial summary judgment, Salinas will not discuss those disputed facts.

Rudy Salinas, as corporate representative for Salinas, testified that he originally purchased the disabled tractor at issue in this case in 2001. (Exhibit 1, Affidavit of Rudy Salinas P. 7) He then gifted the truck to his father. (Exhibit 1, Affidavit of Rudy Salinas P. 7) At the time of the subject accident, his father was in the process of selling the disabled tractor to Roy Salinas, and Roy had already started making payments for the tractor. (Exhibit 1, Affidavit of Rudy Salinas P. 9 and Exhibit 2, Affidavit of Roy Salinas P. 3) During this entire time, Rudy Salinas was the title owner of the disabled tractor. (Exhibit A to Lester's Brief, p.13 l. 7-12, Exhibit 1, Affidavit of Rudy Salinas P. 7)  However, at all times relevant to this case, Roy Salinas had possession, custody and control of the disabled tractor and was responsible for all maintenance for the tractor; therefore, Roy was the equitable owner of the disabled tractor at the time of the subject accident. (Exhibit A to Lester's Brief, p.42 l. 17-19, Exhibit 1, Affidavit of Rudy Salinas P. 10, and Exhibit 2, Affidavit of Roy Salinas P. 5) "When a buyer tenders part payment and takes possession of a vehicle, that individual becomes the equitable owner, despite the fact that the buyer does not yet have legal title to the car." Foust v. Old Am. County Mut. Fire Ins. Co., 977 S.W.2d 783, 788 (Tex. App. 1998).

The ownership issues in this case closely parallel the Texas case of Truck Ins. Exchange v. Schuenemann, 391 S.W.2d 130 (Tex. Civ. App. 1965). In Schuenemann, Rauel Diaz was involved in a vehicle accident on July 15, 1962, during which he was killed, as was the son of Mr. and Mrs. Martinez. The Martinez' sued Schuenemann, administrator of Diaz' estate, for damages. Truck Ins. Exchange, Diaz' insurer, filed suit seeking a declaration it was not obligated to defend the estate because Diaz was the owner of the vehicle, but was only covered by a "non-owner policy" at the time of the accident. The stipulated facts were:



> (1) The 1953 Ford being driven by Rauel Diaz at the time of the collision was purchased by Rauel's father, Marcos Diaz, in 1957. The title certificate issued at that time shows the father Marcos Diaz, as owner. (2) In May, 1959, Marcos Diaz and his wife, Aurelia, gave the custody and control of the car to their son, Rauel, as a graduation present, intending "at that time that the said Rauel Diaz would immediately have the title to said automobile." (3) Thereafter, Rauel Diaz had the custody, possession and control of the automobile at all times until July 15, 1962, the date of the collision and Rauel's death. (4) The title certificate to the vehicle was never transferred to Rauel, and no application for a new title in the name of Rauel Diaz was ever made by anyone, so that the provisions of the Texas Certificate of Title Act, Art. 1436--1, Vernon's Ann. Penal Code, were never complied with in connection with the transfer of the vehicle.

Id. at 131. Rauel Diaz' parents also testified that after May, 1959, they asked their son's permission to use the car and that their son paid all maintenance and repair expenses. Id. The trial court held that because Diaz had not complied with the Certificate of Title Act, the gift was void and Truck Ins. Exchange was obligated to defend the Diaz estate because Diaz was a "non-owner" under the policy.

Truck Ins. Exchange appealed, and the Texas Court of Civil Appeals reversed, finding that Diaz was the owner of the vehicle at the time of the accident, therefore, the insurance company was under no obligation to defend the case. The Court held that "failure to comply with the statutory requirements relating to the transfer of a motor vehicle does not render the transfer void as between the parties." Id. at 132. It further held that while an administrative presumption of ownership arises from the certificate of title, such presumption can be overcome by evidence showing ownership of the vehicle was an individual not listed on the title. The Court held that sufficient evidence had been presented to establish that Rauel Diaz was the owner of the vehicle, therefore Truck Ins. Exchange owed no obligation to defend the estate.



Like Rauel Diaz in <u>Schuenemann</u>, Roy Salinas was the owner of the disabled tractor in this case. Roy Salinas was solely responsible for the maintenance and repair of the tractor; he had custody and possession of the tractor; he had been making payments toward the tractor; and both Rudy and Roy have clearly testified that the disabled tractor was Roy's vehicle at the time of the subject accident. (Exhibit 1, Affidavit of Rudy Salinas, P. 7-10; Exhibit 2, Affidavit of Roy Salinas, P. 3-5). Simply because the disabled tractor was still titled in Rudy Salinas' name did not mean that Roy was not the owner of the tractor. At a minimum, material facts are in dispute over the ownership of the disabled tractor and, as a result, summary judgment is improper.

Rudy did not discuss repair plans for the disabled tractor with Roy as it was Roy's truck. (Exhibit A to Lester's Brief, p. 42, l. 17-19.) Repairs and/or maintenance on a tractor are made by whomever the owner operator of that tractor wants to take the vehicle to for repairs/maintenance. (Exhibit A to Lester's Brief, p. 25, l. 5-13.) Further, Salinas only directed Lozano to go back to Virginia to retrieve the trailer hitched to Roy's disabled tractor in order to finish the delivery. (Exhibit A to Lester's Brief, p.42, l. 4-9, Exhibit 1, Affidavit of Rudy Salinas P. 12 and 13 and Exhibit 3, Affidavit of Eduardo Lozano P. 5). While Salinas assumed Roy was going to go back to Virginia to retrieve his disabled tractor, Salinas had no involvement with or any knowledge of how Roy planned or ultimately did retrieve his disabled tractor until after the subject accident. (Exhibit A to Lester's Brief, P.42 l. 17-19, Exhibit 1, Affidavit of Rudy Salinas P. 20 and Exhibit 2, Affidavit of Roy Salinas P. 11, 12 13, and 14). The disabled tractor was in no way being used in the course of Salinas' business at the time of the subject accident; Salinas' only business interest involved the trailer attached to Roy's disabled tractor; and, at the time the accident took place, the trailer had already been hitched to Lozano's tractor and parked



in a parking space at the rest area when Roy, Martinez, and Guitterez were involved in the recovery of Roy's disabled tractor and when the accident occurred. (Exhibit 1, Affidavit of Rudy Salinas P. 20 and Exhibit 3, Affidavit of Eduardo Lozano P. 17). Salinas had no business interest in the disabled tractor at the time of the accident as it was a nonfunctional tractor owned by Roy for which he was solely responsible and which he was in the process of attempting to tow back to Texas for repairs when the accident took place.

Finally, Plaintiff's reliance on Rudy Salinas' references to the disabled tractor as "my truck" is misplaced. Rudy's testimony in reference to "my truck" did not relate to ownership of the tractor, rather it dealt with the DOT issue of having the driver drug tested and/or dealing with insurance and his need to report the accident to the Salinas' insurance company. (Exhibit A to Lester's Brief, p. 65 1-8, p.68 l. 4-9 and 10-14.) Rudy testified that there was no need to have Martinez drug tested after the accident as he was not a Salinas driver at the time the accident occurred. (Exhibit A to Lester's Brief, p. 65 1-8, p.68 l. 4-9 and 10-14.) Similarly, Rudy testified that there was no need to report the accident to Salinas' insurance company as Roy's tractor, which is listed as being an insured vehicle under Salinas' policy, was not damaged. (Exhibit A to Lester's Brief, p. 65 1-8, p.68 l. 4-9 and 10-14.) Also, it should be noted that, Plaintiff's counsel, in her questioning of Rudy Salinas, acknowledged that the truck involved in this accident was "Roy's tractor." (Exhibit A to Lester's Brief, p. 13 l. 1-2, and p. 72 l. 2-4.)

**II. Material facts are in dispute regarding whether Roy Salinas and Israel Martinez were employees of Salinas at the time of the subject accident.**

As previously stated, Salinas does not have employees; rather, it uses independent contractors/owner operators for dispatched loads. (Exhibit A to Lester's Brief, p.9 l. 25, p.17 l. 11-14 and Exhibit 1, Affidavit of Rudy Salinas, P. 6.) While both Roy and Israel had hauled loads for



Salinas in the past, neither was acting as an independent contractor/owner operator for Salinas at the time of the subject accident. (Exhibit 1, Affidavit of Rudy Salinas P. 13) Salinas had instructed only Lozano to drive to Virginia to recover the load being hauled by Roy's disabled tractor and complete the delivery of the contents of the trailer. (Exhibit 1, Affidavit of Rudy Salinas P. 13 and Exhibit 3, Affidavit of Eduardo Lozano P. 5) Salinas never instructed Roy and/or Israel to "complete the final leg of the journey" as Plaintiff is claiming. (Exhibit A to Lester's Brief, p.42 l. 4-19, and Exhibit 1, Affidavit of Rudy Salinas, P. 12, 13) Further, both Roy and Israel have testified that Israel went to Virginia with Roy as a personal favor and that Salinas knew nothing about these plans made by Roy to retrieve his disabled tractor. (Exhibit 1, Affidavit of Rudy Salinas P. 14, 15, 16, 17, 18, 19, Exhibit 2, Affidavit of Roy Salinas P. 11, 12, 13, 14, 15 and Exhibit 3, Affidavit of Eduardo Lozano P. 13, 14, 15, 16, 17.) Material facts relevant to determining the employment relationship between Salinas, Roy, and Martinez are still in dispute, thus this issue is not ripe for summary judgment.

Additionally, there can certainly be no finding that Salinas is vicariously liable for any willful negligence by Roy and/or Martinez as no facts have been presented that Salinas participated, authorized, or ratified Martinez' and/or Roy's actions which allegedly caused the accident. Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963) (noting that punitive damages "'cannot be awarded against a master or principal for the wrongful act of his servant in which he did not participate, and which he did not authorize or ratify'") (quoting Hogg v. Plant, 145 Va. 175, 181, 133 S.E. 759, 760 (1926)); see also Hogg, 145 Va. at 180, 133 S.E. at 760 ("'A principal, therefore, though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent.'")



(quoting Lake Shore R. Co. v. Prentice, 147 U.S. 101, 107 (1893)). There is absolutely no evidence that Salinas knew about or approved of Roy and/or Martinez' actions that purportedly caused the accident, and as such, there can be no grant of summary judgment finding Salinas to be vicariously liable should a jury conclude Roy or Martinez' actions constituted willful and wanton conduct.

### III. Disputed material facts exist as to Salinas' knowledge of the use and/or control of the SMC tractor.

Roy contacted Cuellar, an owner of SMC, and, ultimately borrowed an SMC tractor with a towing hitch attached in order to return to Virginia and pick up his disabled tractor. (Exhibit 2, Affidavit of Roy Salinas P. 9) Roy was able to borrow the SMC tractor as a personal favor by Cuellar, given Roy used to work for SMC. (Exhibit C to Lester's Brief p.13 l. 12-13) Similarly, Martinez and Gutierrez agreed to help Roy return to Virginia for the purpose of recovering Roy's disabled tractor as a personal favor. (Exhibit 2, Affidavit of Roy Salinas P. 7) Salinas had no knowledge that Roy had even borrowed an SMC tractor (Exhibit 1, Affidavit of Rudy Salinas P. 14), let alone that Martinez or Gutierrez went with Roy to Virginia (Exhibit 1, Affidavit of Rudy Salinas P. 15) or that the Salinas tractor to be used by Lozano in retrieving the trailer attached to Roy's disabled tractor was being towed by the SMC tractor on its return trip to Virginia. (Exhibit 1, Affidavit of Rudy Salinas P. 18, Exhibit 2, Affidavit of Roy Salinas P. 15, and Exhibit 3, Affidavit of Eduardo Lozano P. 15)

Further, as previously stated, there is no evidence that Salinas participated in obtaining the SMC tractor, authorized, approved, or ratified its use, and/or even knew about Roy and/or Martinez' use of the SMC tractor until after the accident. As such, there can be no grant of summary judgment finding Salinas to be vicariously liable for the use of the SMC tractor by Roy or Martinez.

Additionally, there can be no finding that Salinas is vicariously liable for any willful negligence by Roy and/or Martinez in their use of the SMC tractor as no facts have been presented that Salinas participated, authorized, or ratified Martinez' and/or Roy's actions which allegedly caused the accident, including the retrieval and use of the SMC tractor. Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963) (noting that punitive damages "'cannot be awarded against a master or principal for the wrongful act of his servant in which he did not participate, and which he did not authorize or ratify'") (quoting Hogg v. Plant, 145 Va. 175, 181, 133 S.E. 759, 760 (1926)); see also Hogg, 145 Va. at 180, 133 S.E. at 760 ("'A principal, therefore, though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent.'") (quoting Lake Shore R. Co. v. Prentice, 147 U.S. 101, 107 (1893)). There is absolutely no evidence that Salinas knew about or approved of Roy and/or Martinez' actions that purportedly caused the accident or their use of the SMC tractor while retrieving Roy's disabled tractor, and as such, there can be no grant of summary judgment finding Salinas to be vicariously liable should a jury conclude Roy or Martinez' actions constituted willful and wanton conduct.

## CONCLUSION

WHEREFORE, based on all the foregoing, Salinas Express, LLC, by counsel, requests that the Court deny Mr. Lester's Partial Motion for Summary Judgment and grant any other and further relief that the Court may deem just and proper.



SALINAS EXPRESS, LLC,


By:    /s/ *Daniel P. Frankl*   
               Of Counsel

Daniel P. Frankl (VSB No. 26741)
Audra M. Dickens (VSB No. 82379)
FRANKL MILLER & WEBB, LLP
1711 Grandin Road
Post Office Box 4126
Roanoke, Virginia 24015
540-527-3515 Telephone
540-527-3520 Facsimile
Counsel for Salinas Express, LLC



## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing to the following:

Johneal Moore White (VSB No. 74251)
  jwhite@glennrob.com
Melissa Walker Robinson (VSB No. 29065)
  mrobinson@glennrob.com
Victor S. Skaff, III (VSB No. 40054)
  vskaff@glennrob.com
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W., Suite 100
Roanoke, VA 24016
(540)767-2206 – Phone
(540)767-2220 – Fax
Attorney for Plaintiff

Lawrence A. "Lex" Dunn (VSB No. 30324)
  LDunn@morrismorris.com
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia  23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Attorney for SMC Transport, LLC

David W. Hearn, Esquire (VSB# 37347)
  dhearn@sandsanderson.com
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804)783-7285 – Phone
(804)783-7291 – Fax
Attorney for Israel Martinez, Jr.



                                                  _/s/ Daniel P. Frankl_
                                                       Of Counsel