IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON LESTER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 7:15-cv-00665 |
| ) | |
| SMC TRANSPORT, LLC, ) | |
| ) | |
| and ) | |
| ) | |
| ISRAEL MARTINEZ, JR., ) | |
| ) | |
| and ) | |
| ) | |
| SALINAS EXPRESS, LLC, ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN OPPOSITION TO**
**LESTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant SMC Transport, LLC. ("SMC"), by counsel, states the following in opposition to Plaintiff Brandon Lester's ("Lester") Motion for Partial Summary Judgment ("Motion"):

**Statement of the Case**

The trial date for this matter is December 12, 2016. The discovery deadline is October 28, 2016. Lester filed his First Amended Complaint on June 6, 2016, and the Defendants' responsive pleadings were due no later than June 29, 2016. The Defendants timely filed responsive pleadings. SMC Transport and Salinas Express, LLC ("Salinas Express") have both

filed Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] A hearing on Lester's Motion and the Defendant's Rule 12(b)(6) Motions to Dismiss has been scheduled for oral argument on August 9, 2016. The Court therefore faces the unusual circumstance considering Rule 12(b)(6) Motions to Dismiss and a Motion for Partial Summary Judgment simultaneously.

## Preliminary Statement

Lester's Motion is premature, and it improperly alleges facts without citation to the record. Indeed, Lester has completely ignored the requirements of Local Civil Rule 56, which states in pertinent part:

> (b) Any motion for summary judgment or any other dispositive motion must contain a separately captioned section setting forth with specificity the materials facts claimed to be undisputed together with specific record citations in support thereof.

Lester also makes legal statements that are either without supporting citation or are not supported by their accompanying citation.

Lester's Motion boils down to demanding the Court to rule that SMC Transport is liable for the actions of Israel Martinez, Jr. ("Martinez") while discovery is ongoing, while 12(b)(6) Motions are pending, while there are other parties being brought into the case (see Third Party Complaint of Salinas Express (Dkt. 83)), and while the facts, even facts stated by Lester to be undisputed, are still in formation. Simply put, there is no undisputed evidence which could support Lester's Motion.

---

[1] All Rule references herein refer to the Federal Rules of Civil Procedure unless otherwise noted.

**Statement of Genuine Issues / Facts in Dispute**

Lester's four-page Preliminary Statement and twenty-four-page Statement of Facts are largely discussions of what Lester believes each witness or party will state, not statements of undisputed fact. SMC objects to all allegations not properly supported by citation to the record.

First, and foremost, SMC objects to any allegation or conclusion that suggests Martinez was or is an agent, employee of independent contractor of SMC to allow SMC Transport to be liable in this case. (See Declaration of Sergio Cuellar ("Cuellar"), attached hereto as Exhibit 1, at ¶ 13.)

There is overwhelming evidence that Martinez was not an agent, employee or independent contractor of SMC. (Ex. D to Brief in Support (Martinez Depo.) at 110–112; Ex. E to Brief in Support (Cuellar Depo.) at 42:6–11.) SMC did not control the actions of Martinez or anyone else on that trip. (Ex. D to Brief in Support (Martinez Depo.) at 110–112; Ex. A to Brief in Support (Rudy Salinas Depo.) at.96:11–17; Ex. C to Brief in Support (Roy Salinas Depo.) at 76:24–25 77:1–19; Exhibit 1, Cuellar Dec at ¶ 14.)

Martinez, Roy Salinas, Eduardo Lozano, and Art Gutierrez went on the trip to Virginia to benefit Salinas Express, not SMC. (Ex. D to Brief in Support (Martinez Depo.) at 145–147; Ex. A to Brief in Support (Rudy Salinas Depo.) at 49:6–9; Ex. C to Brief in Support (Roy Salinas Depo) at 77:20–22.) SMC did not dispatch, direct, control, or supervise any of them on the trip. (Ex. 1 (Cuellar Dec.) at ¶ 14.) The trip to Virginia was not for SMC. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 95:1; 96:1–9; Ex. C to Brief in Support (Roy Salinas Depo.) at 76:24–25). In fact, the logbooks he used were labeled "Salinas Express." (Ex. D to Brief in Support (Martinez Depo.) at 146, 148.) Israel Martinez testified that no one from SMC made any calls to

him or the other persons in the tractor on the trip up to Virginia. (Ex. D to Brief in Support (Martinez Depo.) at 112:1–4.)

Cuellar, who was the principal of SMC, had never met Martinez before the accident. (Ex. E to Brief in Support (Cuellar Depo.) 30:9–25, 31:1–3, 40:11–12.) Martinez did not know Cuellar before the accident. (Ex. D to Brief in Support (Martinez Depo.) at 48:20–23, 50.) Roy Salinas paid for the SMC truck fuel for the trip to and from Virginia, and he was not reimbursed by anyone. (Ex. C to Brief in Support (Roy Salinas Depo.) at 71:17–23.)

Martinez's answer to Lester's fourth interrogatory to Martinez best describes Martinez's status, in which answer Martinez clearly states facts that show SMC is not his employer and that he is not an agent or independent driver for SMC:

> 4. If at the time of this collision you were involved or engaged in the business of your employer or any other person and acting within the scope of such employment, please set forth the name and address of your employer or the other person for whom you were engaged in business, your destination at the time of the collision, the purpose of your trip, and the name and address of your immediate supervisor.
>
> **ANSWER: Before the date of the accident, Roy Salinas was operating a commercial vehicle owned by Salinas Express, LLC that became disabled. Roy Salinas called me, advised that his vehicle was disabled at a rest stop in Virginia and instructed me to assist him by bringing another vehicle to Virginia that was equipped to tow the disabled Salinas truck. Roy instructed me to go to the Salinas Express yard in Zapata, Texas, to locate a truck with a towing mechanism that was in the yard with the keys inside the cab and to bring that vehicle to Virginia. Roy further instructed me to stop in Houston, Texas on the way to Virginia to pick up an individual named "Art", who Roy explained was a mechanic that would also assist with the disabled vehicle. In response to Roy's instructions, I located the vehicle matching his description in the Salinas yard, drove that vehicle to Houston, and brought Art with me to Virginia to assist Roy Salinas with the disabled Salinas Express Vehicle. I performed these activities in the same scope and manner as other work assignments I received from Salinas Express before the accident.**

There is no mention of SMC in this answer. There is no mention of Cuellar in this answer.

As for allegations of any mutually beneficial relationship between SMC and Salinas Express, Salinas Express had never borrowed any equipment from SMC. (Ex. E to Brief in Support (Cuellar Depo.) at 41:14–16. Ex. A to Brief in Support (Rudy Salinas Depo.) at 54:7–9.) Salinas Express and SMC have never shared drivers. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 54:10-12.) Salinas Express and SMC had not previously done favors for each other. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 54:13–15.)

Finally, Roy Salinas was not an agent, employee, or independent contractor of SMC at the time of the accident. Roy Salinas started working for Salinas Express in September 2015. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 16:7–20.) Roy Salinas stopped working for SMC in September 2015. (Ex. C to Brief in Support (Roy Salinas Depo.) at 15:5–7; Ex. E to Brief in Support (Cuellar Depo.) at 24:6–11.) After he began working for Salinas Express, Roy Salinas only worked for Salinas Express. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 16:17–20.) He last worked for SMC in September 2015. (Ex C to Brief in Support (Roy Salinas Depo.) at 15:5–7.) Roy Salinas had never used a Salinas Express-owned truck while working for SMC. (Ex. A to Brief in Support (Rudy Salinas Depo.) at 13:1–14:12.)

## Argument

**A. Lester's extensive discussion of the Federal Motor Carrier Act and MCS-90 is misplaced and does not establish a basis for SMC's vicarious liability for Martinez's actions, and he fails entirely to explain the basis for placard liability.**

Prior to addressing directly any component of his Complaint for which he seeks summary judgment, Lester discusses at length the Federal Motor Carrier Act ("FMCA") and the MCS-90

Page **5** of **14**

Case 7:15-cv-00665-GEC   Document 87   Filed 07/08/16   Page 5 of 14   Pageid#: 1648

endorsement. It is not quite clear how Lester aims to apply that authority to his claims. He does not apply his lengthy citation of authorities to any of his counts. Much of it, particularly case law such as Proctor v. Colonial Refrigerated Transportation, Inc., 494 F.2d 89 (4th Cir. 1974) and Judy v. Tri-State Motor Transit Co., 844 F.2d 1496 (11th Cir. 1988) that addressed leasing situations and is thus inapplicable to this case in which SMC owned the tractor at issue, can be readily dismissed as irrelevant. Regardless, to the extent that the case law may inform Lester's argument for summary judgment on any specific count, SMC addresses below the reasons why Lester is not entitled to summary judgment on any count against SMC.

> **B. Lester has failed to establish grounds for summary judgment as to either his claim for SMC's vicarious liability or his claim for SMC's liability through the doctrine of placard liability.**

Lester argues that SMC is vicariously liable for Roy Salinas and Martinez's alleged torts for three reasons as a matter of law. Brief in Support at 40. These arguments should therefore be treated as a motion for summary judgment under Counts 1, 2, 7, and 9.[2] First, without citation to any portion of the record, Lester claims that "SMC's previous reliance upon the Salinas Express Tractor in connection with its own business operations thus suggest[s] a *quid pro quo* arrangement between the companies, particularly given their familial connections." Brief in Support at 40. Second, and again without any citation, Lester claims that SMC received "a clear

---

[2] Nowhere in his Motion does Lester mention on what counts he is moving for summary judgment. Section IV of the Brief in Support claims that SMC is vicariously liable for the negligence and/or willful negligence of both Roy Salinas and Martinez, "in using the SMC tractor with the permission of SMC, under its ICC license and placards." The Court should therefore construe the Motion as a motion for Count 1 (SMC's vicarious liability for Martinez's negligence), Count 2 (SMC's vicarious liability for Martinez's willful and wanton negligence), Count 7 (SMC's "placard liability"), and Count 9 (SMC's vicarious liability for Roy Salinas's negligence).

Page **6** of **14**

benefit" in allowing Salinas Express to use SMC's tractor "to determine its functionality for SMC's normal hauling operations." Brief in Support at 40. Third, Lester argues that since SMC "instructed Martinez and Roy Salinas on use of the towing assembly and did not remove its placards from the vehicle prior to the job in question," he is entitled to summary judgment.

Lester cites 49 C.F.R. § 390.5 to provide the definitions of an owner and employee under the FMCA. Lester declines to apply these definitions to the facts of the case; indeed, Section IV of the Brief in Support is completely void of any citation to the record. It is therefore unclear how Lester claims these definitions fit into his liability analysis, much less as to how that authority proves that he is entitled to summary judgment. Engaging these definitions for a moment, though, reveals that the definitions add nothing to a standard vicarious liability analysis. Defining an employer as "any person . . . who owns or leases a commercial motor vehicle . . . or assigns employees to operate it" and an employee as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety" does not guide any analysis as to whether either Roy Salinas or Martinez were agents of SMC acting within the scope of that agency at the time of the alleged torts. 49 CFR § 390.5. Rather, Lester must cite undisputed facts to establish that Roy Salinas or Martinez were acting as agents of SMC at the time of the accident. He does not do so.

Unsupported claims that "SMC's previous reliance upon the Salinas Express Tractor in connection with its own business operations . . . suggest[s] a *quid pro quo* arrangement between the companies, particularly given their familial connections," fall well short. Brief in Support at 40. As for Salinas Express's quid of allowing SMC to use a Salinas Express tractor, SMC never relied on a Salinas Express-owned tractor. (Ex. A to Brief in Support (Rudy Salinas Depo.) at

13, 14:1–12.) Switching the order of the quid pro quo, SMC did not expect anything in return for allowing Salinas to use its tractor. (Ex. 1 (Cuellar Dec.) at ¶ 8.) Lester's claim that SMC benefited from "determin[ing the SMC's tractor's] functionality for use in SMC's normal hauling operations," without any citation to the record to suggest that SMC wanted this alleged benefit, is similarly unfounded. Brief in Support at 40. In fact, SMC did not offer the use of its tractor for testing. (Ex. 1 (Cuellar Dec.) at ¶ 10.)

Finally, even in moving for summary judgment, Lester has yet to cite any case law or provide any analysis to explain how SMC's failure to "remove its placards from the vehicle prior to the job in question" in and of itself entitles SMC to summary judgment. Brief in Support at 40. Instead, he cites the Graves Amendment (49 U.S.C. § 30106), which is inapplicable because it applies only to the leasing or renting context. See 49 U.S.C. § 30106 (a) (establishing that "[a]n owner of a motor vehicle that rents or leases [a] vehicle . . . shall not be liable . . . by reason of being the owner of the vehicle . . . for harm to persons or property" when the owner rents or leases vehicles and is not itself negligent). Though it is not entirely clear what Lester intends in citing a leasing regulation in a non-leasing context, he seems to suggest that since SMC did not trade or lease its tractor, it is not protected by the Graves Amendment and is therefore liable as an owner. The logic of this argument does not hold. It does not follow that if a lessor-owner may be protected by the Graves Amendment, then an owner that does not lease is automatically liable for the torts of others using its vehicle. There still must be an underlying basis of vicarious liability.

Also, Lester cites a regulation concerning the nature, size, shape, location, and color of a tractor's markings (49 C.F.R. § 390.21) to argue that its requirement that a tractor display "[t]he

Page **8** of **14**

legal name . . . of the motor carrier operating" the tractor conclusively establishes the tractor's named owner's control over the tractor and vicarious liability for all torts committed with it. Brief in Support at 42. This argument takes 49 C.F.R. § 390.21 out of context. It is clear that the regulation concerns how covered vehicles must be marked, such as requiring that markings must "[b]e readily legible, during daylight hours, from a distance of 50 feet." 49 C.F.R. § 390.21(b)(3). It would be unreasonable to assume that the regulation was aimed at apportioning liability, and it is clear that Lester makes no argument as to how the regulation should be read to do so.

Lester's citation to 49 U.S.C. § 11107(a)(4) and Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc., 719 F. Supp. 455 (W.D. Va. 1989) is also inapposite. Yet again, Lester cites law admittedly applicable to leasing scenarios and then disregards that important distinction to claim that that precedent is applicable here. It is not. 49 U.S.C. § 11107 was specifically designed to allow the Interstate Commerce Commission to "require a motor carrier . . . that uses motor vehicles not owned by it" to, among other things, comply with certain requirements as if it owned the vehicle. 49 U.S.C. § 1107(a). That rulemaking authority expressly does not extend to the regulation of carriers using vehicles they own, and therefore any case law, such as Ryder Truck Rental Co., Inc., interpreting regulations that spring from that mandate are irrelevant to the common law question of whether SMC is vicariously liable for the alleged torts of Roy Salinas and Martinez in using its vehicle.

Page **9** of **14**

### C. Lester is not entitled to summary judgment on his negligence per se claim because he readily admits that there remains a genuine issue of material fact, and he also conflates the elements of a negligence per se claim.

First and foremost, regardless of the validity of the claim, Lester's negligence per se claim is not ripe for summary judgment disposition because the alleged negligence, which consists of not having minimum insurance coverage, is contingent upon a future ruling of the Court in a separate declaratory judgment action. See Brief in Support at 44 (seeking summary judgment as to its negligence per se claim "to the extent that SMC's insurance is inapplicable to the accident and Lester's damages"); Amended Complaint (Dkt. 65) at ¶¶ 66–67 (claiming negligence per se "[t]o the extent that [SMC's insurer] is successful in in arguing that the underlying policy to which the Form MCS-90 is attached does not directly cover Martinez or the SMC tractor for the accident at issue"). Clearly, then, there is a genuine issue of material fact, as a central component of Lester's negligence per se depends upon a future ruling. Lester is therefore not entitled to summary judgment.

Furthermore, Lester has confused the elements of negligence per se claim. A negligence per se claim based upon a statutory or regulatory violation requires that Lester prove the following:

> [T]he tortfeasor had a duty of care to Lester, the standard of care for that duty was set by statute, the tortfeasor engaged in in acts that violated the standard of care set out in the statute, the statute was enacted for public health and safety reasons, Lester was a member of the class protected by the statute, the injury was of the sort intended to be covered by the statute, and the violation of the statute was a proximate cause of the injury.

Steward ex rel. Steward v. Holland Family Properties, LLC, 284 Va. 282, 287, 726 S.E.2d 251, 254 (2012). Negligence per se claims rely upon a statute or regulation to establish a standard of care, not a duty of care. See id. ("[A] statute [or regulation] setting the standard of care does not create

the duty of care."). Lester conflates that concept in arguing that "[t]he minimum level of financial responsibility required by 49 C.F.R. § 387.7 . . . established a duty owed by SMC." Brief in Support at 43. For a successful negligence per se claim, Lester would need to look to a statute or regulation to establish a breach of a duty. Lester cites no duty of SMC to ensure that it provided insurance coverage to the public at large for the accident at issue, and there is none. Additionally, while Lester fails even to mention the requisite component of proximate cause, it seems that Lester suggests that a lack of insurance coverage has caused the damages at issue (i.e., his personal injuries). The accident, not any lack of insurance, can be the only proximate cause of Lester's alleged injuries, and therefore Lester is not entitle to summary judgment on his negligence per se claim.

WHEREFORE, Defendant SMC Transport, LLC, by counsel, respectfully requests that the Court dismiss Plaintiff Brandon Lester's Motion for Partial Summary Judgment and grant any other and further relief that the Court may deem just and proper.

SMC TRANSPORT, LLC

/s/ Gibson S. Wright
Lawrence A. "Lex" Dunn (VSB No. 30324)
Gibson S. Wright (VSB No. 84632)
Attorneys for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: ldunn@morrismorris.com
gwright@morrismorris.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing to the following:

Daniel Patrick Frankl
Attorney for Salinas Express, LLC
FRANKL MILLER & WEBB, LLP
1711 Grandin Road SW
Roanoke, VA 24015
(540) 527-3515 – Phone
(540) 527-3520 – Fax
dfrankl@franklmillerwebb.com

David W. Hearn
Attorney for Israel Martinez, Jr.
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804)783-7285 – Phone
(804)783-7291 – Fax
dhearn@sandsanderson.com

Johneal Moore White
Melissa Walker Robinson
Victor S. Skaff, III
Attorney for Lester
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W., Suite 100
Roanoke, VA 24016
(540)767-2206 – Phone
(540)767-2220 – Fax
jwhite@glennrob.com

/s/
Gibson S. Wright (VSB No. 84632)
Attorney for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: gwright@morrismorris.com