CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 02 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRANDON LESTER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Civil Action No. 7:15CV00665
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　**MEMORANDUM OPINION**
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Hon. Glen E. Conrad
SMC TRANSPORT, LLC, et al.,　　　)　　Chief United States District Judge
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)
　　　　　　　　　　　　　　　　　)

In this diversity action, plaintiff Brandon Lester contends that he sustained serious personal injuries when his vehicle struck a tractor trailer driven by Israel Martinez, Jr. in the early morning hours of October 26, 2015. The case is presently before the court on the plaintiff's motion for partial summary judgment, plaintiff's motion to strike the third-party complaint, and the defendants' motions to dismiss. For the reasons set forth below, the parties' motions will be denied in part and granted in part.

## Background

Defendant Salinas Express, LLC ("Salinas") is a Texas limited liability company in the business of shipping goods through interstate travel. Salinas is co-owned by Rudy Salinas ("Rudy") and his sister, both citizens of Texas. Salinas leases nine trucks from their owner-operators and maintains that it only hires independent contractors to complete its shipping jobs. Nevertheless, Salinas's job applications are for "employment" and refer to the drivers as "employees." Through the course of a delivery, Rudy assigns drivers, and sometimes, Rudy will also instruct the drivers as to the specific tractor that will be used. Drivers are required to check in with Rudy every morning and must adhere to set delivery deadlines. At the end of a trip, drivers

must also turn in log books to Rudy or his sister. After a successful delivery, Salinas is paid by its broker. At that point, Salinas pays its drivers in cash and issues a Form 1099 to those individuals it pays. Occasionally, Salinas performs certain repairs on tractors used in its business.

The 1988 Peterbilt tractor involved in the accident was purchased by Rudy roughly fifteen years ago (the "Salinas Tractor"). Approximately seven or eight years ago, Rudy gifted the tractor to his father, who, in 2014, started the process of selling the tractor to Roy Salinas, Rudy's brother ("Roy"). Roy testified that he is purchasing the tractor from Rudy and that he is unsure as to the remaining balance or the amount he has paid towards its purchase. The Salinas Tractor, however, remains titled in Rudy's name.

Prior to September 2015, Roy worked for both SMC Transport, LLC and Salinas. Roy sometimes used the Salinas Tractor while completing deliveries for both companies. Roy was not the exclusive driver of the Salinas Tractor, as it was also driven by Israel Martinez, Jr. at least twice.

Defendant Israel Martinez, Jr. ("Martinez") is a driver for Salinas. Martinez completed employment paperwork in the first half of 2015 and had made three or four trips for Salinas prior to October 2015. According to the allegations in the complaint, Martinez "had a history of failing to adhere to state and federal regulations governing the operation of his vehicle." Am. Compl. ¶ 48.

Defendant SMC Transport, LLC ("SMC") is a Texas limited liability company also in the shipping business. SMC is owned by Sergio Cuellar ("Cuellar"). Cuellar is Rudy and Roy's cousin. SMC owns two trucks and operates seven others through owner-operators. One of the tractors SMC owns (the "SMC Tractor") was also involved in the accident. Cuellar purchased this particular tractor in July of 2015 and made several mechanical repairs to the vehicle over the next few months. The October ride to Virginia was the SMC Tractor's first long-haul drive.

2

## I. The Events Leading to the Accident

In the days before the October 26, 2015 accident, Roy was completing a delivery for Salinas by driving a trailer of goods from Maryland to Laredo, Texas using the Salinas Tractor. Eddie Lozano ("Lozano"), another Salinas driver, was not far behind Roy and was also in the process of completing a delivery for Salinas. During the trip, Roy started to have problems with the Salinas Tractor, and it eventually broke down. Roy left the Salinas Tractor at a rest stop in Botetourt County, Virginia. At that point in time, Roy notified Rudy that he had broken down. Lozano picked up Roy, and the two completed Lozano's delivery en route to Texas.

Rudy instructed Lozano to return to Virginia to pick up the disabled Salinas Tractor. When asked how Rudy thought Lozano was going to get back to Virginia, Rudy replied, "I thought Roy was going to drive back with him." 30(b)(6) Dep. of Rudy Salinas 46:13. Martinez testified that Rudy called Martinez asking him to help Roy and Lozano pick up the disabled Salinas Tractor. Other testimony suggests that Roy, not Rudy, called Martinez to join him on the trip back to Virginia. To get Martinez's phone number, Roy called Rudy. During the phone call, Roy told Rudy he was asking for Martinez's contact information so that Martinez could help Roy pick up the disabled Salinas Tractor.

To complete the trip, Lozano, Roy, and Martinez used the SMC Tractor to tow a third tractor ("Lozano's Tractor") to Virginia. This would allow Lozano to quickly deliver the now-late goods that remained in a trailer attached to the disabled Salinas Tractor. Before leaving for Virginia, however, Roy, Martinez, and Lozano had difficulty connecting Lozano's Tractor to the SMC Tractor. They called Cuellar for help; Cuellar met them at a truck stop in Texas and connected Lozano's Tractor to the SMC Tractor. Prior to this interaction, Cuellar had not met Martinez. During the entire trip, the SMC Tractor had SMC placards on it.

3

## II. **The Accident**

Upon arriving at the Botetourt rest stop, Lozano's Tractor was unhooked from the SMC Tractor and then used to deliver the goods Roy had left with the Salinas Tractor. The Salinas Tractor was then hooked up to the SMC Tractor, so that it could be towed back to Texas. Just before 6:00 a.m. on October 26, 2016, Martinez and Roy attempted to leave the rest stop using the SMC Tractor and with the Salinas Tractor in tow. To do so, Martinez drove north, through the entrance ramp of the rest stop, so that he could make a U-turn onto southbound Interstate 81 ("I-81").

According to the complaint, Martinez was driving and Roy was directing him. Martinez proceeded to drive out of the rest stop's entrance ramp. He had "not attempted to place flares on I-81 South to alert drivers that his vehicle would be blocking the southbound lanes." Am. Compl. ¶ 34. Additionally, other drivers on the highway had "very limited visibility of the entrance ramp" to the rest stop. Id. ¶ 42. In attempting to make a U-turn and enter onto I-81 using the entrance ramp, Martinez caused the SMC Tractor, towing the Salinas Tractor, to block all lanes of traffic. At this time, Lester was cresting a rise immediately before the entrance ramp. Lester was unable to stop or maneuver his vehicle in time and struck the tractors. Subsequently, a second vehicle struck Lester's vehicle. According to Salinas's third-party complaint, the second vehicle was negligently driven by Anthony Shifflett in the course of his employment with CTWWM, Inc. After the accident, Martinez again attempted to exit onto southbound I-81 by making the same illegal U-turn. Several hours later, phone records indicate that Cuellar called Martinez.

### **Procedural History**

Lester filed his amended complaint against Salinas, SMC, and Martinez on June 6, 2016, alleging nine claims of negligence, willful and wanton negligence giving rise to punitive damages,

4

common-law vicarious liability, negligence per se, negligent entrustment and negligent hiring, placard liability, and constructive fraud. On June 24, 2016, plaintiff filed a motion for partial summary judgment, asking the court to find as a matter of law that the disabled Salinas Tractor was owned by Rudy and controlled by Salinas; that Salinas Express is vicariously liable, either through a theory of placard liability or common-law vicarious liability, for the negligence of Roy and Martinez while they were using both the Salinas Tractor and the SMC Tractor; that SMC is vicariously liable, either through a theory of placard liability or common-law vicarious liability, for the negligence of Roy and Martinez; and that SMC was negligent per se in placing the SMC Tractor in interstate travel with its placards but without the requisite insurance coverage.

On June 24, 2016, SMC filed a motion to dismiss several of Lester's claims. On June 27, 2016, Salinas did the same. On July 8, 2016, Salinas filed a third-party complaint pursuant to Federal Rule of Civil Procedure 14 against Anthony Ray Shifflett ("Shifflett") and CTWWM, Inc. d/b/a/ Carter's ("Carter's"), alleging that Lester's injuries arose when Shifflett negligently struck Lester with his vehicle. On July 11, 2016, Lester filed a motion to strike the third-party complaint.

The motions have been fully briefed and argued, and they are ripe for decision.

### Defendants' Motion to Dismiss

### Standard of Review

When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell

5

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

When a federal court's jurisdiction rests upon diversity of citizenship, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. See Ferens v. John Deere Co., 494 U.S. 516, 519 (1990). In Virginia, the substantive law of the place of the wrong governs the proceeding. See Frye v. Commonwealth, 231 Va. 370, 376 (1986). The accident in this case occurred in Virginia. Therefore, the court concludes that Virginia law applies.[1]

### I.    Placard and Vicarious Liability Against SMC Transport

Lester asserts several theories of liability against SMC. In Count I, Lester asserts vicarious liability against SMC for Martinez's negligence; in Count VII, placard liability; and in Count IX, vicarious liability against SMC for Roy's negligence. Defendant SMC moves to dismiss counts VII and IX.

To the extent Lester contends that SMC is liable by virtue of its placards remaining on the SMC trailer, this theory of liability is based on outdated authority. Plaintiff cites Phillips v. Dallas Carrier Corp. for the proposition that the "Interstate Commerce Commission regulations eliminated the independent contractor concept ... and cast upon motor carriers full responsibility for the negligence of drivers." 766 F. Supp. 416, 418-419 (M.D.N.C. 1991) (citing Proctor v. Colonial Refrigerated Transp., Inc., 494 F.2d 89, 92 (4th Cir. 1974)). The ICC regulations, however, have since been amended. Specifically, 49 C.F.R. § 376.12 now states: "Nothing in the

---

[1]    The court notes that Texas law applies to plaintiff's motion for partial summary judgment on the issue of truck ownership.

6

provisions required by ... this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." Even before the amendments, the ICC had stated that it "did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist." 3 I.C.C.2d 92, 93 (I.C.C. Oct. 10, 1986). Moreover, Lester's complaint fails to allege that SMC leased its tractor to Roy or Martinez or that there was a written interchange agreement, prerequisites for this I.C.C. regulation to apply. See 49 C.F.R. §§ 376.1, 376.31. Accordingly, the court will dismiss Count VII alleging placard liability against SMC and will deny plaintiff's motion for partial summary judgment on the issue of placard liability against both SMC and Salinas.

Next, the court must determine whether Lester has sufficiently alleged common-law vicarious liability against SMC for Roy's negligence (Count IX). In making the determination of whether an entity is an independent contractor or employer of another, the court examines the following factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. See Hadeed v. Medic-24, Ltd., 237 Va. 277, 288 (1989). The fourth factor, power of control, is determinative. Id. However, the employer need not actually exercise this control; the test is whether the employer has the power to exercise such control. McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 81 (1997).

Here, the court finds Lester's amended complaint sufficient. Lester alleges that Roy acted in the "course and scope of his employment with ... SMC." Am. Compl. ¶ 14. The facts pled include a joint agreement between Salinas and SMC to use the SMC Tractor, that SMC "authorized use of its tractor by employees of Salinas Express ... [and] use of its placards," that SMC maintained control over the operator and those assisting the operator of the SMC Tractor,

7

that Cuellar delivered the SMC Tractor to Roy and instructed them how to use the towing equipment, that Cuellar knew Roy would be driving the SMC Tractor, and that Roy's use of the SMC Tractor benefitted SMC because it allowed for a test drive of the SMC Tractor. Am. Compl. ¶ 25-30. Simply put, Lester has alleged enough facts, believed as true, for a plausible claim of a master-servant relationship between SMC and Roy. Accordingly, the court will deny defendant SMC's motion to dismiss Count IX.

## II.     Punitive Damages for Willful and Wanton Negligence

In Counts II and IX, Lester alleges willful and wanton negligence against Roy and Martinez, giving rise to punitive damages, and vicarious liability for said punitive damages against Salinas and SMC. Salinas and SMC move to dismiss these claims for punitive damages. Punitive damages "may be recovered only when there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another." Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 257 Va. 53, 58 (1999). "An allegation of willful and wanton negligence is sufficient to form the basis for punitive damages." Perry v. Truckers Express, Inc., No. Civ.A. 700CV00466, 2001 WL 856703, at *2 (W.D. Va. July 5, 2001) (citing Philip Morris Inc. v. Emerson, 235 Va. 380, 407-08 (1988)). Willful and wanton negligence means "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Griffin v. Shively, 227 Va. 317, 321 (1984).

In his amended complaint, Lester alleges that Martinez "illegally turn[ed] his vehicle before sunrise out of an I-81 entrance ramp at a low rate of speed onto this major highway, thereby blocking the southbound lanes of travel." Am. Compl. ¶ 42. Martinez did not attempt to place flares "to alert drivers that his vehicle would be blocking the southbound lanes." Id. ¶ 34. Martinez

8

"knew of the very limited visibility of the entrance ramp for drivers on the highway." Id. ¶43. Furthermore, even after the accident and after being charged with reckless driving, Martinez "again attempted to make a U-turn onto I-81 South from the entrance ramp." Id. ¶ 43-44. Lester contends that these actions demonstrate a "conscious disregard for the lives of other motorists." Id. ¶ 44.

Similarly, Lester asserts that Roy was "waving or signaling to Martinez to exit by driving the SMC Tractor out of the entrance ramp of the rest stop." Roy directed Martinez "before daylight and in an area of obscured visibility." Id. ¶ 76. Lester maintains that providing this direction "demonstrated an intentional, willful and flagrant disregard for the safety and lives of those drivers on I-81." Id. ¶ 14, 76.

The court finds that Lester has sufficiently pled willful or wanton negligence to form the basis of a claim for punitive damages. The facts, taken in the light most favorable to the plaintiff, demonstrate that Martinez was aware "from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Emerson, 235 Va. at 408. Roy was also aware of the obscured visibility but still directed Martinez to exit through the entrance ramp. Cf. Blankenship v. Quality Transp., LLC, No. 1:15CV00019, 2015 WL 4400196, at *2-3 (W.D. Va. July 17, 2015) (allowing a claim for punitive damages to survive a motion to dismiss when the plaintiff pled that the employer acted with willful and wanton negligence by authorizing its employee to drive excessive hours in violation of federal law). These facts, if taken as true, demonstrate willful or wanton negligence "sufficient to form the basis for punitive damages." Perry, 2001 WL 856703, at *2.

Defendants Salinas and SMC argue that Lester has failed to establish that they participated, authorized, or ratified the willful and wanton conduct. Such allegations are required to sustain a

9

claim for punitive damages against a principal. See Freeman v. Sproles, 204 Va. 353, 358 (1963) (noting that punitive damages "'cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify.'") (quoting Hogg v. Plant, 145 Va. 175, 181 (1926)). The fact that Martinez and Roy acted within the scope of their employment is not sufficient to support a claim of punitive damages against the employer. Hogg, 145 Va. at 180 ("A principal, therefore, though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages … unless the principal participated in the wrongful act."). Lester claims that "SMC and Salinas Express acquiesced and/or condoned the actions of Martinez [and Roy] making them likewise responsible for said [punitive] damages." However, this assertion is not supported by any factual allegations suggesting ratification, acquiescence, or participation. Am. Compl. ¶ 46, 77. Accordingly, the court will grant SMC's and Salinas's motions to dismiss Lester's claims for punitive damages contained in Counts II and IX.

### III.  Negligent Entrustment

In Virginia, a plaintiff alleging injuries arising from the negligent entrustment of an automobile must plead sufficient facts to show that "the owner knew, or had reasonable cause to know, that he was entrusting his car to an unfit driver likely to cause injury to others." Denby v. Davis, 212 Va. 836, 838-39 (1972) (emphasis added). The plaintiff must also plead that defendant's negligent entrustment proximately caused plaintiff's injuries. Id. The Virginia Supreme Court has allowed findings of negligent entrustment "only where the owner had notice of some physical or mental defect of the driver." O'Brien v. Glenn, 80 Va. Cir. 188, at *1 (2011). Examples include a severe eye condition and no license and a revoked license due to alcohol abuse. Denby, 212 Va. at 836; Crowell v. Duncan, 145 Va. 489, 510 (1926). In Turner v. Lotts, the

10

Supreme Court of Virginia declined to find the defendants negligently entrusted their vehicle when the entrustee had three traffic tickets and two previous accidents. 244 Va. 554, 558 (1992). The court found "no allegation that [entrustee's] license was restricted, suspended, or revoked. Just as important, there [was] no allegation that [entrustee's] conduct in prior accidents was negligent." Id. Thus, in Virginia, a plaintiff must carefully plead negligent entrustment. Id.

Count III of Lester's complaint pleads Salinas's negligent entrustment; Count V pleads SMC's negligent entrustment. Without reaching the facts pled, the court finds that Lester has failed to state a prima facie case against Salinas. The complaint alleges that the Salinas Express tractor was "leased to" Salinas. Am. Compl. ¶ 12. It does not allege that Rudy owned the Salinas Tractor or that Salinas controlled it.[2] Finally, Count III is completely devoid of any specific allegation that Salinas's negligent entrustment proximately caused Lester's injuries. Thus, the court concludes that Lester has failed to state a prima facie claim of negligent entrustment against Salinas and will grant Salinas's motion to dismiss Count III.

The court similarly finds that Lester has failed to state a prima facie claim for negligent entrustment against SMC (Count V). While Lester does allege that SMC was the owner of the SMC tractor and that this negligent entrustment was the proximate cause of his injuries, he fails to allege that SMC knew or had reasonable cause to know it was entrusting its vehicle to an unfit driver. Moreover, Lester has not pled that Martinez had a physical or mental impairment. While Virginia courts have allowed claims for negligent entrustment when a disabled vehicle was loaned, Lester does not contend that the vehicle's unfitness was the proximate cause of his injuries. Hack v. Nester, 241 Va. 499, 508 (1990) (finding negligent entrustment when the vehicle had a defective headlight). Instead, Martinez's unfitness was the proximate cause. However, stating that Martinez

---

2    As discussed infra, plaintiff has not established as a matter of law that Rudy was the owner of the Salinas Tractor or that Salinas controlled the Salinas Tractor.

11

had a "terrible driving history" and had violated state and federal laws, without more, is not sufficient. See e.g., Turner, 244 Va. at 558 (dismissing a claim for negligent entrustment because plaintiff had not established the owner knew of a mental or physical defect of the driver). Thus, the court will grant SMC's motions to dismiss Count V.

## IV. Negligent Hiring

In Count IV, Lester alleges that Salinas was negligent when it hired Martinez. Salinas moves to dismiss this claim. "Liability based on negligent hiring or retention is premised on situations that create 'an unreasonable risk of harm to others.'" Jones v. Kroger Ltd. P'ship I, 80 F. Supp. 3d 709, 715 (W.D. Va. 2015) (quoting J. v. Victory Tabernacle Baptist Church, 236 Va. 206, 211 (1988)). Specifically, liability attaches when the employer fails "to exercise reasonable care in placing an individual with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which ... it should have been foreseeable that the hired individual posed a threat of injury to others." Interim Pers. of Cent. Va., Inc. v. Messer, 263 Va. 435, 440 (2002). "[T]he Virginia Supreme Court has determined that 'an unreasonable risk of harm' element requires the threat of serious and significant physical injury." Parker v. Geneva Enters., Inc., 997 F. Supp. 706, 713 (E.D. Va. 1997).

Here, Lester contends that Salinas, by hiring Martinez, breached its duty to ensure that Martinez was competent "so as not to create an unreasonable risk of harm." Am. Compl. ¶ 52, 55. Lester pleads that Martinez had a "terrible driving history," had "a history of causing accidents and failing to adhere to state and federal regulations governing the operation of his vehicle," and was "incompetent and unfit" to drive a tractor trailer. Aside from broadly stating that Martinez had caused accidents and failed to adhere to regulations, however, Lester fails to plead specifics as to what made Martinez's "terrible driving history" so terrible. More importantly, Lester completely

12

fails to plead that Salinas should have foreseen that serious physical injury would result from putting Martinez in an employment position.

In the same vein, Lester claims that "Martinez's occupation requires skill and expertise, in the absence of which is extremely hazardous." Id. ¶ 53. Lester does not plead which of these skills, if any, Martinez lacked, that Martinez's driving record suggested that these skills were lacking, or that the absence of these skills made harm to others foreseeable. See Morgan v. Wal-Mart Stores East, L.P., 2010 WL 4394096, at *3 (E.D. Va. Nov. 1, 2010) (dismissing a claim for negligent supervision, in part, because plaintiff "offer[ed] no description of the required job skill ... [nor] allege[d] that the employee who allegedly struck her ... had propensities that would have posed a threat of injury to others").

Lester argues that this court and others have allowed a claim for negligent hiring to survive a motion to dismiss on weaker facts. He misses that in those cases, the plaintiffs pointed to specific records indicating prior safety issues, such as a conditional or unsatisfactory safety rating by the Federal Motor Carrier Safety Administration. Moreover, those plaintiffs pled that the prior safety issues created foreseeable risks. See, e.g., Jones v. C.H. Robinson Worldwide, Inc., 558 F. Supp. 2d 630, 644 (W.D. Va. 2008) (pleading that "the likelihood of a major accident with a member of the public was foreseeable"). Thus, the court concludes that Lester has failed to plead sufficient facts to sustain a claim for negligent hiring, and Salinas's motion to dismiss count IV will be granted.

### V.    Negligence Per Se and Constructive Fraud Against SMC

In Count VI, Lester contends that defendant SMC was negligent per se because it allowed the SMC Tractor to enter into interstate travel without insurance in violation of 49 C.F.R. § 387.7 (2015). Similarly, in Count VIII, Lester alleges constructive fraud against SMC because SMC

13

allowed its vehicle to enter into interstate travel with placards indicating it met the financial responsibility requirements of the Federal Motor Carrier Act when, allegedly, it did not. SMC moves to dismiss both counts arguing that the claims are not ripe for summary judgment because the alleged negligence or fraud is contingent upon a pending declaratory judgment action. Furthermore, SMC contends that the accident, not the lack of insurance or fraud committed, was the proximate cause of Lester's injuries.

It is well settled that to succeed on a claim for negligence or negligence per se, a plaintiff must prove that the defendant's actions proximately caused plaintiff's injuries. See Talley v. Danek Med., Inc., 179 F.3d 154, 157 (4th Cir. 1999). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522 (1970). The plaintiff fails to provide, and the court cannot identify, any authority suggesting that lack of insurance or constructive fraud could produce an event causing serious bodily injury. Thus, the court will grant defendant SMC's motion to dismiss Count VI and VIII. Accordingly, plaintiff's motion for partial summary judgment on the issue of negligence per se will be denied.

## Plaintiff's Motion for Summary Judgment

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Libertarian Party of Va., 718 F.3d at 313. To withstand a summary

14

judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Anderson, 477 U.S. at 248. "[A] party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999). Thus, to the extent Salinas's and SMC's affidavits contradict prior deposition testimony or other evidence in the record, the court will disregard them. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n.7 (4th Cir. 2001) (noting that there must be a "bona fide inconsistency").

## Discussion

### I.    Ownership of the Salinas Tractor

First, Lester moves the court to find, as a matter of law, that Rudy owned the Salinas Tractor and Salinas controlled it. As a threshold matter, the court determines that Texas law applies to this issue.[3] Under Texas law, "evidence of the name in which an automobile is registered raises a presumption of ownership." Grant v. Espiritu, 470 S.W.3d 198, 203 (Tex. Ct. App. 2015) (citations omitted). This presumption, however, is an "administrative presumption" and not, in and of itself, evidence. Empire Gas & Fuel Co. v. Muegge, 143 S.W.2d 763, 767 (Tex. Comm'n App. 1940) ("[W]hen met by rebutting proof, [the presumption] is not to be weighed by the jury or treated by the jury as evidence."). Thus, the presumption "disappears when met by positive proof ... that the jury has a right to believe." Id. at 529.

Here, Lester offers deposition testimony that the Salinas Tractor was titled in Rudy's name, that Rudy consistently referred to the Salinas Tractor as "my truck," and that the Salinas Tractor was used, at Rudy's direction, by other Salinas drivers after Roy started making payments. Lester

---

3       In Virginia, "the general rule is, that rights as to personal and transitory things, are to be determined by the laws of the country where the right accrued." Jones' Adm'r v. Hook's Adm'r, 23 Va. 303, 310 (1824). The court notes that Virginia law applies elsewhere in this case.

15

urges the court to find the presumption unrebutted and conclude that the Salinas Tractor was owned by Rudy and controlled by Salinas. To do so, however, would be to give an administrative presumption the weight of record evidence.

Other deposition testimony suggests that Rudy gifted the Salinas Tractor to his father several years prior to the accident. In 2014, Rudy's father sold the truck to Roy. While Roy Salinas is unsure of the remaining balance or how much he has paid, and there is conflicting evidence as to whether Roy owes Rudy or his father, a reasonable jury could nevertheless find evidence that Rudy was not the owner of the Salinas Tractor at the time of the accident. Moreover, the affidavits proffered by defendants are not inconsistent with the deposition testimony. These affidavits indicate that Roy—not Rudy or Salinas—was responsible for the maintenance and repair of the Salinas Tractor. Additionally, Roy used the Salinas Tractor when completing deliveries for SMC, suggesting he owned it. Thus, the court concludes there is a genuine issue of fact regarding ownership of the Salinas Tractor and denies plaintiff's motion for summary judgment on this issue.

## II. Vicarious Liability of Salinas Express and SMC

Lester moves the court to find, as a matter of law, that Salinas and SMC are subject to vicarious liability for the negligent actions of Roy and Martinez. Defendants offer several reasons why they are not subject to vicarious liability: (1) because Roy and Martinez were independent contractors, (2) because the accident occurred when Roy and Martinez were acting outside the scope of their contract; (3) because Salinas was not aware that Roy and Martinez were using the SMC Tractor, (4) because SMC obtained no benefit through Martinez and Roy's use of the SMC Tractor; and (5) because, as this was not a leasing situation, SMC is not liable under the plaintiff's placard theory of liability.

16

As stated supra, in determining whether an entity is an independent contractor or employer of another, a court must examine the following factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. See Hadeed v. Medic-24, Ltd., 237 Va. 277, 288 (1989). The power of control is determinative. Id.

Here, Lester has established, and Salinas has failed to meaningfully rebut, that Roy and Martinez were employees of Salinas. In is uncontroverted that Salinas exerted significant control over its drivers. Rudy would direct which tractor Martinez would drive, each driver was expected to check in with Rudy every morning, Salinas instructed drivers on their delivery deadlines, Salinas took responsibility for certain repairs, and each driver was expected to keep and turn in logs to Salinas after every trip. Moreover, drivers would complete employment applications that listed the drivers as employees. When asked why he paid his drivers with 1099s, Rudy was unable to provide any reason other than industry custom. Thus, the court concludes that Roy and Martinez were employees of Salinas Express.

"[W]hether an agent's tortuous act is imputed to the principal, the doctrine's primary focus is on whether the activity that gave rise to the tortuous act was within or without the agent's scope of employment." Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc., 249 Va. 39, 44 (1995). A tortuous act will be within the scope of employment "if the service itself … was within the ordinary course of such business." Id. (quoting Davis v. Merrill, 133 Va. 69, 77-78 (1922)). "It is the employer's burden to show that the employee 'was not acting within the scope of his authority when he committed the acts complained of.'" Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1351 (4th Cir. 1995) (quoting Bellsouth, 249 Va. at 43-44).

The court concludes that Roy and Martinez acted in the scope of their employment when they drove the SMC Tractor to Virginia with Lozano to pick up the disabled Salinas Tractor and

17

complete the delivery that Roy was previously unable to complete. Lester points to testimony establishing that Rudy asked Lozano to finish the delivery, Rudy was aware that Roy was accompanying Lozano to pick up the disabled Salinas Tractor, Rudy was aware that Martinez was also travelling with Roy and Lozano, and that, ultimately, the trip made by Roy, Lozano, and Martinez enabled Salinas to fulfill its delivery obligations. Additionally, Martinez used the Salinas Tractor, at the direction of Rudy, at least one time after the accident, establishing that retrieving the broken down Salinas Tractor and delivering the load was "within the ordinary course of [Salinas's] business." Therefore, the court determines that Salinas is vicariously liable for the negligent conduct of Roy and Martinez and will grant plaintiff's motion for partial summary judgment as to this issue.

The court must next determine whether SMC is vicariously liable by law for the tortuous conduct of Roy, Martinez, or both.[4] To establish common-law vicarious liability, Lester points to the fact that Roy Salinas was, prior to the accident, a driver for SMC. Additionally, Cuellar attached the Salinas trailer to the SMC Tractor and did not remove the SMC placards from the SMC Tractor. Shortly after the accident, phone records suggest that Cuellar called Martinez. Finally, SMC had not tested its recently-repaired tractor on a long haul prior to Martinez and Roy driving it to Virginia. These facts, Lester argues, establish that both Martinez and Roy were acting under the control of SMC and for the benefit of SMC.

In response, defendant SMC demonstrates that, during the trip, Martinez used logbooks with the name Salinas Express. Prior to the trip, Cuellar and Martinez had never met. Similarly, Martinez was an employee of Salinas, not SMC, and SMC and Salinas had never shared employees. Moreover, Roy stopped working for SMC in September of 2015 and subsequently

---

4    The court will dismiss Lester's claim that SMC is liable under a theory of placard liability, as discussed supra.

18

worked exclusively for Salinas Express. There is also conflicting testimony as to whether Roy or Cuellar suggested the use of the SMC Tractor to retrieve the disabled Salinas Tractor. A reasonable jury, SMC argues, could find that both Martinez and Roy were not agents of SMC. The court agrees and denies plaintiff's motion for partial summary judgment as to SMC's vicarious liability for the negligence of Roy and Martinez.

## Plaintiff's Motion to Strike

Plaintiff moves the court to strike defendant Salinas's third-party complaint against Anthony Shifflett ("Shifflett") and CTWWM, Inc. d/b/a Carter's ("Carter's"). Rule 14 of the Federal Rules of Civil Procedure allows a defendant "to serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). When the third-party complaint is filed within fourteen days after an answer, the third-party plaintiff need not seek leave of the court prior to filing. Id. Nevertheless, Federal Rule of Civil Procedure 14(a) permits any party to "move to strike the third-party claim," and the decision whether to grant such a motion lies within the court's discretion. Duke v. R.F.C., 209 F.2d 204, 208 (4th Cir. 1954).

"In deciding whether to [strike] a third-party complaint, the court must look to a number of factors." United States v. Savoy Senior Housing Corp., No. 6:06CV031, 2008 WL 631161, at *1 (W.D. Va. Mar. 6, 2008). Stated concisely,

> [T]he court must look to the delay in presenting the third-party complaint to the court, the prejudice to the non-moving party resulting from the delay, the introduction of unrelated issues, whether the new claims would unduly complicate the original suit, the similarity between the issues and the evidence in the original suit and the third-party complaint, and whether the claim is obviously unmeritorious.

19

Id. at \*2. No one factor is determinative, and the court has broad discretion to deny or dismiss the third-party complaint. See Id.; Nolan Co. v. Graver Tank & Mfg. Co., 301 F.2d 43, 50 (4th Cir. 1962).

Lester contends that Salinas's third-party complaint is untimely because Salinas filed the complaint fourteen days after it answered the amended complaint as opposed to the original complaint. Moreover, Lester alleges that the identities of Shifflett and Carter's have been known to Salinas since before the instant action was filed. Lester also contends that Shifflett will be filing its own personal injury suit against defendants. In such an action, any claim defendants have against Shifflett would be compulsory. See Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that … the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."). Finally, Lester asserts its discovery is coming to a close, and allowing a third-party defendant would cause significant expense.

Salinas argues that the third-party complaint is timely because it was filed within fourteen days of its answer to the amended complaint. Importantly, Salinas asserts, it is the amended complaint that first asserts a theory of liability giving rise to defendants' claim against Shifflett and Carter's. See F.T.C. v. Capital City Mortg. Corp., 186 F.R.D. 245, 247 (D.D.C. 1999) ("[T]he 'original answer' can be an answer to an amended complaint, so long as the basis for impleader is that which is new, i.e. 'original,' in the answer to the amended complaint."). In the alternative, Salinas moves the court to retroactively grant it leave to file a third-party complaint. Fed. R. Civ. P. 14(a)(1). Salinas further argues that Lester will suffer no prejudice by adding the third-party defendant because there is ample time before trial to engage in more discovery, the issues of

negligence will dominate between the third-party plaintiff and the third-party defendant, and the evidence will be the same as the third-party complaint arises out of the same set of facts.

For several reasons, the court will grant plaintiff's motion to strike. First, the court concludes that Salinas was put on notice of the possible third-party defendants prior to the instant action and through the original complaint. The original complaint alleges that Lester's vehicle was struck by a second vehicle after impacting defendants' vehicles. The amended complaint makes an identical allegation and adds no more specifics regarding the second vehicle. Moreover, agents of Salinas, Roy and Martinez, were at the scene of the accident and likely had first-hand knowledge of the identity of the second vehicle. Thus, to the extent Salinas could have filed a third-party complaint against Shifflett and Carter's after its original answer, doing so would have furthered the purpose of Rule 14: "to secure a just, speedy, and inexpensive determination" of the action. Lee's Inc. v. Transcon. Underwriters of Transcon. Ins. Co., 9 F.R.D. 470, 471 (D. Md. 1949). Second, "[s]ituations might arise where independent claims between a third-party plaintiff and a third-party defendant, even though growing out of the same transaction involved in the original action and the claim of right to indemnification, could not be litigated expeditiously and without serious or seemingly endless complications." Noland, 301 F.2d at 50. Given the familial relationship between the parties, the allegations of agency and vicarious liability, the number of tractors involved, the complicated factual basis of the claim, and the likely need to establish whether yet another individual was an employee in the event of adding a third-party defendant, the court concludes that the instant action is the type of situation where adding a third-party would undercut the purpose of Rule 14 and needlessly complicate the issues.

Third, the court finds little prejudice to Salinas in striking the third-party complaint, inasmuch as it may pursue the same claim against Shifflett and Carter's in separate litigation. See

21

Aetna Cas. & Sur. Co. v. Barboursville Am. Legion Post, 966 F.2d 1441, 1992 WL 132857, at *5 (4th Cir. 1992) ("[I]n order to challenge successfully the dismissal without prejudice of a properly grounded third-party claim, a defendant must show more prejudice than the mere prospect of renewed litigation."). In fact, Salinas may have to do so should Shifflett file his own personal injury case. See Fed. R. Civ. P. 13(a). Finally, the court finds that Salinas "offers no possible explanation of how or why [Shifflett and Carter's] could be liable" to Salinas for Roy and Martinez's negligence. Consolidated Rail Corp. v. Friedman, 758 F. Supp. 128, 130 (S.D.N.Y. 1990); see also Kenrose Mfg. Co., Inc. v. Fred Whitaker Co., Inc., 512 F.2d 890, 892 n.1 (4th Cir. 1972) ("[A] possibility of indemnification is the only basis upon which a third party may be impleaded under Rule 14."). Instead, Salinas denies, "and continues to deny" that it is guilty of any negligence. Third-party Compl. ¶ 5. To the extent Salinas does allege that the third-party defendants are liable to it, Salinas argues only in the alternative and makes only conclusory allegations of indemnification. Id. ¶ 11-12; Ace Investors, LLC v. Rubin, No. 2:08CV289, 2009 WL 249469, at *3 (D. Utah Feb. 2, 2009) (dismissing a third-party complaint that would not survive a motion to dismiss). Accordingly, the court will grant plaintiff's motion to strike and dismiss Salinas's third-party complaint without prejudice.

## Conclusion

For the reasons stated, plaintiff's motion for partial summary judgment will be granted in part and denied in part, plaintiff's motion to strike will be granted, and the defendants' motions to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This _2d_ day of September, 2016.

_[signature]_

Chief United States District Judge

22