IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON LESTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil action No. 7:15-cv-00665 |
| ) | |
| SMC TRANSPORT, LLC. ) | |
| ) | |
| and ) | |
| ) | |
| ISRAEL MARTINEZ, JR., ) | |
| ) | |
| and ) | |
| ) | |
| SALINAS EXPRESS, LLC, ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF SMC TRANSPORT, LLC'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Defendant SMC Transport, LLC ("SMC"), by counsel, states the following in support of its Motion for Summary Judgment in its favor as to Counts 1 and 9 of Plaintiff Brandon Lester's ("Lester") First Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Motion"):

**LIST OF UNDISPUTED FACTS**

1. This matter arises out of an accident on I-81 South on October 26, 2015.

**The Breakdown of the Salinas Express Truck and Borrowing of the SMC Truck**

2. Roy Salinas, a truck driver for Defendant Salinas Express, LLC ("Salinas Express"), was driving with a load for Salinas Express from Chester Town, Maryland en route to Laredo,

Texas while his truck began to experience mechanical problems in the area of Raphine and Fincastle, Virginia. Roy Salinas Dep. (portions of which are attached hereto as Exhibit A) at 5:22–23, 22:6–25:7.

3. Roy Salinas had begun working for Salinas Express in September 2015 after having previously worked for SMC. Roy Salinas Dep. at 75:11–21.

4. Since beginning work at Salinas Express in September 2015, Roy Salinas has not worked for any other business besides Salinas Express. Roy Salinas Dep. at 75:5–10.

5. Roy Salinas called his brother and part-owner of Salinas Express, Rudy Salinas, who told Roy that he would send Eddie Lozano ("Lozano"), another Salinas Express driver who was nearby, to pick up Roy and take him to Texas. Salinas Express 30(b)(6) Dep. (portions of which are attached hereto as Exhibit B) at 8:22–9:1; 41:16–42:16.

6. Roy Salinas left the Salinas Express truck with its full load at a rest area off of I-81 South and went with Lozano to Texas. Lozano Dep. (portions of which are attached hereto as Exhibit C) at 26:17–25; 30:6–8; 39:24–40:2.

7. Lozano has never worked for SMC. Lozano Dep. at 59:6–8.

8. After their return to Texas and delivery of Lozano's load, Rudy Salinas asked Lozano to return to Virginia to pick up the trailer with the Salinas Express load that Roy Salinas had left behind. Lozano Dep. at 29:22–30.

9. Roy Salinas then picked up Israel Martinez, Jr. ("Martinez") in his personal truck in Texas, and he then picked up Lozano. Martinez Dep. (portions of which are attached hereto as Exhibit D) at 47:9–48:19.

10. Martinez worked for Salinas Express in October 2015. Martinez Dep. at 10:14–16;

19:9–15; 20:3–7.

11. Martinez has never worked for SMC. Martinez Dep. at 110:18–20.

12. While he worked for Salinas Express, Martinez did not have any other jobs. Martinez Dep. at 22:22–24.

13. Sergio Cuellar ("Cuellar") is the owner of SMC. SMC 30(b)(6) Dep. (portions of which are attached hereto as Exhibit E) at 9:21–23.

14. Roy Salinas had asked Cuellar if he could borrow a tractor to pick up the broken down Salinas Express tractor he had left in Virginia, and Cuellar had agreed to let him borrow it. SMC 30(b)(6) Dep. at 28:3–20.

15. When Cuellar allowed Roy Salinas to borrow the SMC truck, he did not know of any purpose for lending the truck other than to pick up the broken down Salinas Express tractor. SMC 30(b)(6) Dep. at 59:1–4.

16. Martinez had not previously met Cuellar. Martinez Dep. at 48:22–23.

17. SMC received no benefit from Cuellar lending Roy Salinas the SMC truck for the trip. SMC 30(b)(6) Dep. at 52:5–7; Martinez Dep. at 111:17–19; Roy Salinas Dep. at 77:20–22.

18. SMC did not provide any instructions regarding the use of the SMC tractor on the trip to Virginia or restrict who could drive it. SMC 30(b)(6) Dep. at 33:17–22; Martinez Dep. 111:10–25; Roy Salinas Dep. 77:12–15; Lozano Dep. at 59:20–60:12.

19. SMC did not receive any payment for the use of its truck on the trip. SMC 30(b)(6) Dep. at 52:2–4

20. The Salinas Express tractor was hooked to the borrowed SMC tractor. Lozano Dep. at 32:23–33:6; Martinez Dep at 53:14–54:18.

21. Roy Salinas, Martinez, and Lozano then got into the borrowed SMC tractor towing the Salinas Express tractor and went to Houston to pick up Art Gutierrez ("Gutierrez"), a mechanic. Martinez Dep. at 54:19–55:12.

22. Roy Salinas had called Gutierrez to help him retrieve his broken down Salinas express tractor. Roy Salinas Dep. at 36:25–37:5.

23. Gutierrez was not hired by SMC for the trip, has never worked for SMC, and has never spoken with anyone from SMC. Gutierrez Dep. (portions of which are attached hereto as Exhibit F) at 58:17–14; 8:6–8.

24. Martinez and Roy Salinas then took turns driving to Virginia with the four-person crew of Roy Salinas, Martinez, Lozano, and Gutierrez. Roy Salinas Dep. at 38:1–2; Martinez Dep. 57:1–11.

25. No one from SMC was part of the four-person crew. Martinez Dep. at 111:2–4; Roy Salinas Dep. at 77:7–11.

26. The trip to Virginia was not for SMC. Salinas Express 30(b)(6) Dep. at 95:25–96:4; Lozano Dep. 59:9–11; Roy Salinas 76:24–77:1.

27. The purpose of the trip was to allow for the Salinas Express load to be delivered and the broken down Salinas Express tractor to be taken back to Texas. SMC Rule 30(b)(6) Dep. at 36:2–9; Roy Salinas Dep. at 39:5–11.

**Arrival at the Rest Area to Pick up Salinas Express's Load and Broken Down Tractor**

28. The crew of Roy Salinas, Martinez, Lozano, and Gutierrez arrived at the Virginia rest area where Roy Salinas had left his broken down Salinas Express truck in the pre-dawn hours of October 26, 2015. Martinez Dep. at 58:12–14; Roy Salinas Dep. at 39:24–40:13.

29. After the crew arrived, they unhooked the Salinas Express tractor from the borrowed SMC tractor. Roy Salinas Dep. at 41:2–5.

30. The crew then unhooked the broken down Salinas Express tractor from its load. Roy Salinas Dep. at 41:12–14.

31. After pulling the broken down tractor out of the way, the crew hooked up the running Salinas Express tractor to the loaded Salinas Express trailer. Roy Salinas Dep. at 41: 41:15–42:3.

32. The crew then hooked up the broken down Salinas Express tractor to the borrowed SMC tractor. Martinez Dep. at 69:6–9.

33. After the two tractors were paired, the Salinas Express tractor was facing south and the SMC tractor was facing north. Martinez Dep. 70:15–17.

34. Given the position of the tractors, with the working tractor facing north in the opposite direction of the southbound traffic flowing in and out of the rest station, Roy Salinas told Martinez that they had to turn the two trucks around. Roy Salinas Dep. at 44:15–21; 39:24–40:2.

35. The rest stop was very full at the time the crew attempted to turn the two tractors around. Roy Salinas Dep. at 45:21–22.

36. Martinez, driving the borrowed SMC tractor with the broken down Salinas Express tractor attached to it, attempted to drive the SMC tractor out of the entrance ramp to the rest stop, in the opposite direction of traffic, so that he could straighten the broken down Salinas Express tractor behind him and then back it up into the rest stop and make a u-turn. Martinez Dep. at 70:25–76:2.

37. The only connection Martinez had with SMC at the time was that he happened to be driving a vehicle owned by SMC. Martinez Dep. at 111:13–6.

Page **5** of **13**

Case 7:15-cv-00665-GEC   Document 141   Filed 11/01/16   Page 5 of 13   Pageid#: 2397

38.     No one from SMC paid Martinez or told him what to do on that trip to Virginia. Martinez Dep. at 111:7–12.

39.     Martinez had a Salinas Express logbook with him for the trip.  Martinez Dep. at 98:9–19.

**The Accident**

40.     Plaintiff Brandon Lester ("Lester") was driving to work in the early morning of October 26, 2015.  Lester April 2016 Deposition ("Lester Liability Dep.," portions of which are attached hereto as Exhibit G) at 65:9–66:9.

41.     As he travelled I-81 South, Lester came upon the SMC tractor and collided with it. Lester Liability Dep. at 67:10–68:1; 80:19–21.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitle to judgment as a matter of law."  F.R. Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In considering SMC's motion, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once SMC meets its burden of establishing the grounds for summary judgment, however, the opposing party must "go beyond the pleadings and by [his] own affidavits, or by the

'depositions, answers to interrogatories, and admissions file," designate 'specific facts showing that there is a genuine issue for trial.'" Id., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56).

"A federal district court sitting in diversity will apply the substantive law of the forum state." Pyott-Boone Electronics Inc. v. IRR Trust for Donald L. Fetterolf Dated December 9, 1997, 918 F.Supp.2d 532, 541 (W.D. Va. 2013) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). "The substantive law of the forum state for purposes of Erie includes its choice-of-law rules." Id. (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)). Here, "Virginia applies the lex loci delicti, the law of the place of the wrong, to tort actions like this one." Milton v. IIT Research Institute, 138 F.3d 519, 521 (1998) (citing Jones v. R.S. Jones and Assoc., Inc., 246 Va. 3, 431 S.E.2d 33, 34 (1993)).

## ARGUMENT

I. **There is no genuine issue that Martinez or Roy Salinas were agents of SMC acting within the scope of their agency at the time of the accident, and therefore SMC cannot be vicariously liable for their alleged negligence.**

In order for SMC to be liable for the alleged torts of either Martinez or Roy Salinas, Martinez or Roy Salinas must have been agents of SMC at the time of the accident acting within the scope of their agency. See Jefferson Standard Life Ins. Co. v. Hedrick, 181 Va. 824, 834 (1943) ("[A] principal is liable to third persons for the negligent or wrongful acts of his agent, within the scope of his employment."). The Virginia Supreme Court has recognized four factors to determine the existence of a master-servant relationship:

(1) selection and engagement of the servant,
(2) payment of compensation,
(3) power of dismissal, and
(4) power of control.

Naccash v. Burger, 223 Va. 406, 418, 290 S.E.2d 825, 832 (1982). "The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." Id. (citing Whitfield v. Whittaker Mem. Hospital, 210 Va. 176, 181, 169 S.E.2d 563, 567 (1969)). Importantly here, though, the putative agent must "not only be subject to the [principal's] control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit." Whitfield v. Whittaker Memorial Hospital, 210 Va. 176, 181, 169 S.E.2d 563, 567 (1969); see also Restatement (Second) Agency § 39 ("Unless otherwise agreed, authority to act as agent includes only authority to act for the benefit of the principal."). Because there is no evidence that SMC engaged Martinez or Roy Salinas to do SMC's business work for SMC's benefit, neither were agents, and therefore SMC cannot be held liable for their actions.

### A. Martinez was not SMC's agent at the time of the accident, and therefore Count 1 of the Amended Complaint should be dismissed with prejudice as to SMC.

Applying the above test, Martinez was clearly not an agent of SMC at the time of the accident. First, there is no evidence in the record that SMC selected or engaged Martinez as an SMC servant. Martinez has testified that SMC has never employed him, did not pay him for the trip, and did not direct him during the accident at issue. In short, none of the above four criteria weigh in favor of finding Martinez an agent of SMC. As Martinez admitted, his only connection to SMC was that he happened to be driving a borrowed SMC vehicle at the time of the accident. That single connection is not enough to establish any sort of agency relationship between SMC and Martinez.

Though the question at issue concerned choice of law and whether New York or Virginia

Page **8** of **13**

Case 7:15-cv-00665-GEC   Document 141   Filed 11/01/16   Page 8 of 13   Pageid#: 2400

law applied, the Supreme Court of Virginia in Dreher v. Budget Rent-A-Car Systems, Inc., 272 Va. 390, 634 S.E.2d 324 (2006) noted that "[u]nder Virginia's substantive law regarding tort liability, an automobile owner is not vicariously liable for the negligence of another person simply because the negligent party was operating the vehicle with the owner's permission." Dreher v. Budget Rent-A-Car Systems, Inc., 272 Va. at 395, 634 S.E.2d at 327 (citing Lumbermens Mut. Cas. Co. v. Indemnity Ins. Co., 186 Va. 204, 208, 42 S.E.2d 298, 300 (1947)). Rather, the court explained that "an owner of a vehicle is liable for an operator's negligence only in certain circumstances," such as in cases of negligent entrustment or vicarious liability of a master for its servants actions done within the scope of the servant's employment. Id. at 395–96, 634 S.E.2d at 327 (citing Hack v. Nester, 241 Va. 499, 503, 404 S.E.2d 42, 43 (1990); Abernathy v. Romaczyk, 202 Va. 328, 332, 117 S.E.2d 88, 91 (1960)).

Here, the only connection of Martinez to SMC is that he drove a borrowed SMC tractor in attempting to tow a broken down Salinas Express tractor back to Texas. As Dreher recognizes, Martinez's mere use of a borrowed truck is insufficient to establish SMC's vicarious liability for his alleged torts. Dreher prevents Lester from circularly arguing that SMC's lending of its tractor to the crew to bring the Salinas Express truck back establishes an agency relationship, as the Court noted that there must be an underlying agency relationship independent of Martinez's use of the SMC tractor. Without any agency relationship (or negligent entrustment theory of recovery, which the Court's Order of Sept. 2, 2016 (Dkt. 118) dismissing Count 5: SMC's Negligent Entrustment foreclosed), SMC may not be held liable for Martinez's actions.

On the other hand, as the Court has recognized, Martinez (along with Roy Salinas) was an employee and agent of Salinas Express at the time of the accident. See Lester v. SMC

Page **9** of **13**

Case 7:15-cv-00665-GEC   Document 141   Filed 11/01/16   Page 9 of 13   Pageid#: 2401

Transport, LLC, 2016 WL 4595696, at *9 (W.D. Va. Sept. 2, 2016) (ruling "that Roy and Martinez acted in the scope of their employment when they drove the SMC Tractor to Virginia" and that "Salinas [Express] is vicariously liable for the negligent conduct of Roy and Martinez"). Martinez was acting within the scope of that employment by helping a fellow Salinas Express driver tow his broken down Salinas Express tractor back to Texas while another Salinas Express driver towed the Salinas Express load it had been hauling. In short, the trip was a Salinas Express trip, and Martinez was a Salinas Express driver. Without any evidence that Martinez was acting outside of his employment with Salinas express, the law infers that Martinez was acting in his general employment with Salinas Express and not for another. See Restatement (Second) Agency § 227 cmt. b ("In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer.").

Lester alleges that "Martinez's status . . . as both an employee/agent of Salinas Express and SMC was the result of a joint agreement between the motor carriers pursuant to which Salinas Express used SMC's Tractor in order to complete the job contracted for by Salinas Express and tow the disabled Salinas Express Tractor back to Texas." Amended Complaint at ¶ 25. While SMC may have allowed Salinas Express to use its tractor, nothing in that borrowing arrangement bears out any agency relationship between Martinez in SMC. The corporate designee for Salinas Express has unequivocally testified that the trip to retrieve the broken down tractor was not for SMC. There was no plausible benefit to SMC in lending its tractor to Salinas Express (and there is no evidence of SMC seeking any such benefit), yet it is undeniable that the trip was in furtherance of Salinas Express's business. Moreover, there is no evidence that SMC

exercised or had the right to control any member of the four-man crew that went to Virginia. Nor is there any evidence that SMC in any way directed the towing of the broken down Salinas Express tractor. Absent any indication that SMC chose Martinez to act as its servant, paid Martinez, had the power to fire him, or had the power to control his actions, SMC cannot be found liable for Martinez's torts.

    **B. Roy Salinas was not SMC's agent at the time of the accident, and therefore Count 9 of the Amended Complaint should be dismissed with prejudice as to SMC.**

Similarly, there is no evidence that SMC selected Roy Salinas to act as its servant, paid him, had the power to firm him, or had the power to control his actions. Roy Salinas was a Salinas Express employee whose truck had broken down while hauling for Salinas Express. In consultation with Salinas Express's part-owner, he went back to Texas. He then returned to Virginia with a crew whose clear purpose was to (a) haul the Salinas Express load that the broken down tractor had been pulling and (b) tow the broken down Salinas Express tractor. The only connection that Roy Salinas had to SMC was that he had previously worked for SMC and that he was part of the crew that used a borrowed SMC tractor to return the broken down Salinas Express tractor back to Texas. He specifically testified that the trip was not for SMC, and SMC's corporate designee has testified that the only purpose for its lending of the SMC tractor was for Roy Salinas, a Salinas Express employee, to return the broken down Salinas Express truck. There is no evidence for a factfinder to conclude that either party to that alleged agency agreement even remotely intended to create a master-servant relationship. Without any evidence by which a jury could find that Roy Salinas was acting as an agent of SMC at the time of the accident, the Court should dismiss Count 9 with prejudice as to SMC.

Page **11** of **13**

Case 7:15-cv-00665-GEC   Document 141   Filed 11/01/16   Page 11 of 13   Pageid#: 2403

WHEREFORE, for the foregoing reasons, SMC Transport, LLC, by counsel, requests that the Court grant its Motion for Summary Judgment, dismiss this matter with prejudice as to SMC Transport, LLC, and grant any other and further relief that the Court may deem just and proper.

DATED: November 1, 2016                SMC TRANSPORT LLC


/s/_____
Lawrence A. "Lex" Dunn (VSB No. 30324)
Gibson S. Wright (VSB No. 84632)
Attorney for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: LDunn@morrismorris.com
gwright@morrismorris.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Daniel Patrick Frankl
FRANKL MILLER & WEBB, LLP
1711 Grandin Road SW
Roanoke, VA 24015
(540) 527-3515 – Phone
(540) 527-3520 – Fax
dfrankl@franklmillerwebb.com
*Counsel for Salinas Express, LLC*

David W. Hearn
David Christopher Tait
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804)783-7285 – Phone
(804)783-7291 – Fax
dhearn@sandsanderson.com
dtait@sandsanders.com
*Counsel for Israel Martinez, Jr.*

Johneal Moore White
Melissa Walker Robinson
Victor S. Skaff, III
GLENN ROBINSON & CATHEY PLC
Fulton Motor Lofts
400 Salem Avenue, S.W., Suite 100
Roanoke, VA 24016
(540)767-2206 – Phone
(540)767-2220 – Fax
jwhite@glennrob.com
mrobinson@glennrob.com
vskaff@glennrob.com
*Counsel for Plaintiff*

/s/_____
Gibson S. Wright (VSB No. 84632)
Attorney for SMC Transport, LLC
Morris & Morris, PC
11 South 12th Street, 5th Floor
Richmond, Virginia 23219
P.O. Box 30
Richmond, Virginia 23218-0030
Phone: 804/344-8300
Fax: 804/344-8359
Email: gwright@morrrismorri.com

Page **13** of **13**

Case 7:15-cv-00665-GEC   Document 141   Filed 11/01/16   Page 13 of 13   Pageid#: 2405