CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 22 2016

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON LESTER, ) | |
| ) | Civil Action No. 7:15CV00665 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | Hon. Glen E. Conrad |
| SMC TRANSPORT, LLC, et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

This diversity action, filed by plaintiff Brandon Lester ("Lester") against defendants SMC Transport, LLC ("SMC"), Israel Martinez, Jr. ("Martinez"), and Salinas Express, LLC ("Salinas Express"), arises out of a motor vehicle accident on Interstate 81 ("I-81"). The case is now before the court on SMC's motion for summary judgment and Martinez's motion for partial summary judgment. For the following reasons, the court will grant Martinez's motion and deny SMC's motion.

## Background

The court previously discussed the facts of this case in its earlier memorandum opinion, Lester v. SMC Transport, LLC, No. 7:15CV00665, 2016 WL 4595696 (W.D. Va. Sept. 2, 2016). The following brief recitation of the relevant facts are presented in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

This case arises out of a tractor-trailer accident occurring on southbound I-81 in the early morning hours of October 26, 2015. Roy Salinas ("Roy"), an agent of defendant Salinas Express, was delivering goods from Maryland to Texas when his tractor broke down near a rest stop at exit 158 in Botetourt County, Virginia. Edward Lozano ("Lozano"), another driver for Salinas

Express, was several miles behind Roy, and picked up Roy while en route back to Texas. The two left the tractor Roy was driving at the rest stop (the "Salinas Tractor"). Upon arriving in Texas, Rudy Salinas, the owner of Salinas Express, instructed Lozano to return to Virginia to pick up the disabled Salinas Tractor. Roy joined Lozano, as did defendant Martinez and Art Gutierrez ("Gutierrez").

In order to tow the Salinas Tractor back to Texas, Lozano, Roy, Gutierrez, and Martinez borrowed a tractor owned by defendant SMC. Sergio Cuellar, the owner of SMC, had purchased this particular tractor in July of 2015 and had made several mechanical repairs. The October ride to Virginia was the SMC Tractor's first long-haul drive.

Before Martinez, Roy, Lozano, and Gutierrez left for Virginia, Cuellar met with them and showed them how to operate the towing equipment on the SMC Tractor. Prior to this interaction, Cuellar had not met Martinez. However, Cuellar was aware that Martinez, along with a number of other individuals, was interested in purchasing the SMC Tractor. During the entire trip, the SMC Tractor had SMC placards on it.

Upon arriving at the Botetourt rest stop, the Salinas Tractor was hooked up to the SMC Tractor. Just before 6:00 a.m. on October 26, 2015, Martinez attempted to exit the rest stop by driving the SMC Tractor, which was towing the Salinas Tractor, north up the entrance ramp. This maneuver would have allowed Martinez to make a U-turn onto southbound I-81.

Prior to attempting to make a U-turn onto southbound I-81, Martinez turned on the hazard lights for at least one of the two trucks and turned on the headlights for both trucks. Martinez had not attempted to place flares on the road, nor was he aware of whether the vehicle had flares that he could have utilized. Because of a hill just before the entrance ramp, Martinez could not see any oncoming traffic. While undertaking this maneuver, Martinez caused the SMC Tractor, towing the

2

Salinas Tractor, to block at least the right lane of traffic. At this time, Lester was cresting the hill immediately before the entrance ramp. Lester was unable to stop or maneuver his vehicle in time to avoid striking the SMC Tractor. Subsequently, a second vehicle struck Lester's vehicle. After the accident, Martinez again attempted to exit onto southbound I-81 by making the same illegal U-turn. Several hours later, phone records indicate that Cuellar called Martinez.

### Procedural History

Lester filed his amended complaint against Salinas Express, SMC, and Martinez on June 6, 2016, alleging nine claims of negligence, willful and wanton negligence giving rise to punitive damages, common-law vicarious liability, negligence per se, negligent entrustment and hiring, placard liability, and constructive fraud. On June 24, 2016, plaintiff filed a motion for partial summary judgment and defendant SMC filed a motion to dismiss several of Lester's claims. On June 27, 2016, Salinas also filed a motion to dismiss. The court granted in part and denied in part each motion, finding that Salinas Express was, as a matter of law, vicariously liable for the ordinary negligence of both Roy and Martinez and that Lester did not establish as a matter of law that SMC was vicariously liable for the ordinary negligence of Roy and Martinez. Additionally, the court dismissed Lester's claims of negligence per se, negligent entrustment and hiring, placard liability, constructive fraud, and vicarious liability against Salinas Express and SMC for the willful and wanton negligence of Roy and Martinez.

In early November, defendant Martinez filed a motion for partial summary judgment, asking the court to dismiss Lester's claims of punitive damages against him. Defendant SMC also filed a motion for summary judgment, urging the court to find that SMC cannot, as a matter of law, be held vicariously liable for Roy and Martinez's actions. The motions have been fully briefed and argued, and they are ripe for decision.

3

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### I. Martinez's Motion for Partial Summary Judgment

Defendant Martinez asks the court to grant partial summary judgment as to plaintiff's claims for punitive damages against him, resulting in the dismissal of Count II for willful and wanton negligence. "Willful and wanton negligence is one of three levels of negligence." Harris v. Harman, 253 Va. 336, 340-41 (1997). Simple or ordinary negligence is the failure to use reasonable care; gross negligence is "action which shows indifference to others, disregarding prudence to the level that the safety of others is completely neglected"; and willful and wanton negligence is acting with a "reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Id. It is the kind of conduct that goes "beyond that which shocks fair-minded people." Id. at 341. The Virginia Supreme Court has stated:

> In order that one may be held guilty of wilful [sic] or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of the existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

4

Thomas v. Snow, 174 S.E. 837, 839 (Va. 1934); see also Alfonso v. Robinson, 257 Va. 540, 545 (1999) ("Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted."). "[T]he intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence." Alfonso, 257 Va. at 545 (citing cases).

"Virginia courts generally allow punitive damages only in limited circumstances and require truly egregious conduct in order to qualify." Baker v. Oliver, No. 3:06-CV-00015, 2006 WL 1700067, at *2 (W.D. Va. June 15, 2006) (citing Hack v. Nester, 241 Va. 499, 506 (1988)). For example, Virginia courts have refused to allow a claim for punitive damages to move forward when the defendant had an indeterminate blood alcohol content, drove on the wrong side of the road with one headlight out, had two previous DUI convictions, and suffered from a form of night blindness. Hack v. Nester, 241 Va. at 506-08. Similarly, in Puent v. Dickens, the Supreme Court of Virginia concluded that evidence that an intoxicated driver was speeding and did not attempt to apply the brakes before a crash was not factually sufficient to support a claim for punitive damages. 245 Va. 217, 220 (1993). In sum, Virginia courts disfavor punitive damages, assessing them "only in cases involving the most egregious conduct." Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 257 Va. 53, 58 (1999) (citing Bowers v. Westvaco Corp., 244 Va. 139, 159 (1992)). After reviewing the record before it, the court does not believe that plaintiff has forecast evidence warranting submission of the question of punitive damages to the jury.

It is undisputed that Martinez drove the wrong way up the entrance ramp in efforts to make an illegal U-turn onto southbound I-81. Trooper Atkins Dep. 29:6-10, Docket No. 143-6. Martinez and others testified that they had intended to use the exit ramp, but could not position the SMC Tractor, as it was pulling the Salinas Tractor, in a manner allowing them access to the exit

5

ramp due to the number of other trucks at the rest stop. The uncontroverted evidence indicates that Martinez activated the emergency flashers for the SMC Tractor and the headlights for both the SMC and Salinas Tractor. Martinez Dep., 72:5-13, Docket No. 143-3; Roy Salinas Dep., 45:5-22, Docket No. 143-4.

Seeking to avoid summary judgment against him on this issue, plaintiff argues that he has forecast sufficient evidence to require jury consideration. First, plaintiff points out that Martinez admitted that he did not set out any emergency triangles or flares, nor was he aware that either truck had such equipment. Martinez Dep. 102:9-15, Docket No. 143-3. Second, Martinez testified that he could not see oncoming traffic because of the limited light available and the hill just north of the entrance ramp. Id. 124:17-22, 103:1-6. Third, plaintiff contends that the testimony that Art Gutierrez and Roy were directing Martinez and acting as spotters demonstrates that Martinez knew of the risk of injury. Id. 72: 16-22. Finally, plaintiff argues that Martinez's second attempt at completing the same maneuver gives rise to a factual question as to Martinez's wantonness. Trooper Atkins Dep., 68:3-10, Docket No. 143-6. The court, however, does not believe that these facts give rise to a genuine issue of material fact as to whether Martinez acted with willful and wanton negligence.

The court finds Alfonso v. Robinson to be instructive. 257 Va. 540 (1999). In that case, the Virginia Supreme Court upheld a jury verdict awarding punitive damages when a professional truck driver left a disabled truck stopped in an interstate travel lane, without flares or emergency triangles, for what the driver expected to be ten minutes. The Virginia Supreme Court described how the driver had recently sat through more than eight weeks of training and testified that he knew that federal regulations governing interstate trucking required him to place flares or reflective triangles in the area within ten minutes. He also testified that he knew that the purpose of

6

the emergency triangles was to avoid accidents. Id. at 543-45. The court believes this case to be readily distinguishable.

While it is clear that Martinez violated a traffic law by using an entrance ramp to exit a rest stop, Lester has offered no evidence indicating that Martinez was aware of any federal regulation specifically targeting interstate truckers, such as the one involved in Alfonso. Id. at 543-45 (stating how the driver was aware of a federal regulation requiring triangles or flares to be set out by interstate truckers). Similarly, there is no evidence to suggest that Martinez underwent eight weeks of training or anything remotely similar prior to becoming an interstate trucker. See Martinez Dep. 8:18-19, 11:6-18, Docket 143-3. Further, plaintiff does not suggest that Martinez left the SMC Tractor in a travel lane unattended for any period of time. Alfonso, 257 Va. at 546 (noting that the driver left the truck unattended). Moreover, while plaintiff argues that Martinez had used emergency triangles prior to this accident, suggesting knowledge of the risk of injury without them, Martinez testified differently. When asked of any prior occasion that he had used triangles, Martinez stated, "I don't know." Martinez Dep. 102:19, Docket 143-3. He later testified that he had used them when he "had a blowout…[sometime] after the accident." Id. 102:20-103:2. Taking all reasonable inferences in the plaintiff's favor, the court cannot believe that any reasonable jury would find Martinez's actions were so egregious to manifest "reckless indifference to the consequences," as required by Virginia law. Harris, 253 Va. at 340-41. Accordingly, the court will grant Martinez's motion for partial summary judgment and dismiss Count II.

## II. SMC's Motion for Summary Judgment

SMC seeks summary judgment on the remaining claims against it, arising from Lester's assertion of vicarious liability for the negligence of Martinez and Roy. SMC argues that no reasonable jury could find that either Martinez or Roy was an employee of SMC. Conversely,

7

plaintiff contends that he has established a record upon which a reasonable jury could find differently.

In making the determination of whether a person is an independent contractor or employee of another, exposing the employer to vicarious liability, the court examines the following factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. See Hadeed v. Medic-24, Ltd., 237 Va. 277, 288 (1989). The fourth factor, power of control, is determinative. Id. However, the employer need not actually exercise this control; the test is whether the employer can exercise such control. McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 81 (1997). Additionally, for an employer to be vicariously liable for the torts of its employee, "the work has to be done on the business of the principal or for his benefit." Whitfield v. Whittaker Mem. Hosp., 210 Va. 176, 181 (1969).

In support of its motion for summary judgment, SMC contends that it has presented the following evidence that supports a finding, as a matter of law, that Martinez and Roy were not employees of SMC. First, Roy testified that he drove exclusively for Salinas Express at the time of the accident, despite having previously worked for SMC. Roy Salinas Dep. 74:5-21, Docket 141-1. Second, Martinez was a driver for Salinas Express and stated that he was driving exclusively for Salinas Express in the months prior to the accident. Martinez Dep. at 10:14-16; 19:9-15; 20:3-7; 22:22-24, Docket 141-2. He had never worked for SMC. Id. at 110:18-20. Third, testimony from Cuellar suggests that Roy asked to borrow the SMC Tractor. SMC 30(b)(6) Dep. 27:23-28:5, Docket 141-5. SMC has presented evidence that Cuellar did not engage Roy to use the SMC Tractor, as the plaintiff asserts. Fourth, Martinez admitted that he and Cuellar had not met prior to when Cuellar demonstrated to Martinez and others how to use the towing equipment. Martinez Dep. 48:20-23. Fifth, Cuellar testified that he gave no instructions regarding the use of

the SMC Tractor or who could drive it. SMC 30(b)(6) Dep. 33:17-22; Martinez Dep. 111:10-25; Roy Salinas Dep. 77:12-15. Finally, the evidence suggests that both Roy and Cuellar believed that the purpose of the trip was to bring the Salinas Tractor back to Texas. SMC 30(b)(6) Dep. 36:2-9; Roy Salinas Dep. 39:5-11. SMC argues that, from these facts, no reasonable jury could find the existence of an employer-employee relationship between SMC and Martinez and Roy.

In response to SMC's motion, plaintiff points to the following evidence, arguing that the issue of SMC's vicarious liability is a question for the jury. First, Lester contends that SMC benefitted from the use of the SMC Tractor. Prior to this trip, Cuellar testified that the SMC Tractor had not been used on a "long haul." Cuellar Dep. 44:2-4, Docket 150-1. Moreover, this trip was the first time Martinez, a potential buyer of the SMC Tractor, was able to drive it. Id. 42:3-24, 47:11-14. Additionally, Lester claims that SMC and Salinas Express had a "quid pro quo" relationship, regularly trading favors. Even if they did not have such a relationship, Lester argues that the trip to Virginia was a joint venture, benefitting Salinas Express in the return of the Salinas Tractor and benefitting SMC in the test drive of the SMC Tractor. Cuellar Dep. 94:14-23, 95:14-24, Docket 150-1. Lester asserts that a reasonable jury could find that the use of the SMC Tractor benefitted SMC. See Whitfield Mem. Hosp., 210 Va. at 181 ("[T]he work has to be done on the business of the principal or for his benefit.").

Second, Lester points to evidence suggesting that Cuellar had the ability to control Roy and Martinez. Hadeed, 237 Va. at 288 (stating that the power of control is determinative in establishing and employee-employer relationship). Cuellar instructed Roy, Martinez, Lozano, and Gutierrez how to operate the towing equipment. Id. 84:8-24. Phone records demonstrate that Cuellar called Roy and Martinez roughly thirty times the day before and the day of the accident. Cuellar Phone Records, Docket No. 150-5. Third, Lester cites to Roy's testimony that Cuellar volunteered use of

9

the SMC Tractor to him, and the fact that Roy used to work for SMC, as evidence that Cuellar selected Roy to use the SMC Tractor. Roy Salinas Dep. 16:12-25; see Hadeed, 237 Va. at 288 (listing selection and engagement as a factor demonstrating an employment relationship).

To survive summary judgment, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). All justifiable inferences are to be drawn in favor of the nonmoving party and weight and credibility issues are reserved for the jury. Anderson, 477 U.S. at 255. From the facts recited above, the court believes that the plaintiff has forecast evidence sufficient to create a jury question as to whether Martinez, Roy, or both were employees of SMC. From these facts, a reasonable jury could find that Cuellar had the right to exercise control, giving rise to vicarious liability. See McDonald, 254 Va. at 81 (noting that the power to control the work of the individual is determinative for purposes of whether an individual is an employee or independent contractor). Conversely, a reasonable jury could reach the opposite conclusion. Accordingly, the court will deny defendant SMC's motion for summary judgment.

## Conclusion

For the reasons stated, defendant Martinez's motion for partial summary judgment will be granted and defendant SMC's motion for summary judgment will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 22nd day of December, 2016.

_____
Chief United States District Judge

10

Case 7:15-cv-00665-GEC   Document 167   Filed 12/22/16   Page 10 of 10   Pageid#: 4314